In re the Marriage of Judith Tamara
PETERSON, Petitioner, Respondent,

v.

Joel Spencer PETERSON, Appellant.

No. C9–85–2056.

Court of Appeals of Minnesota.

June 3, 1986.

Kenneth J. Rohleder, Michael J. Pitton, Rohleder & Pitton, St. Paul, for respondent.

Arlene M. Vickers, St. Paul, for appellant.

Heard, considered and decided by LANSING, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

LANSING, Judge.

Joel Peterson appeals from a dissolution judgment and decree based on an oral stipulation made the day of trial. He contends that he did not agree to a number of provisions contained in the decree. We affirm in part, reverse in part, and remand.

## FACTS

Joel and Judith Peterson were married in 1968. They had three children, now ages 15, 13, and 11. Joel Peterson is a traffic manager at Burlington Northern. Judith Peterson has not worked outside the home since 1972. She has a high-school education and some training in office machines. The parties separated in April 1981.

On March 27, 1985, the parties and their lawyers arrived at the courthouse in Anoka for trial. Kenneth Rohleder represented Judith Peterson; Jerome Gotlieb represented Joel Peterson. They decided, at the last minute, to settle. They had prepared no stipulation and continued to disagree on some issues which they chose to submit to the court for resolution. The procedure was outlined by the attorneys:

MR. ROHLEDER: I would prefer to enter into the stipulation as much as we can. There is only one area that we would have some language on and that would be related to his pension benefits and I would submit it to counsel for his approval but I would like to get the matter, if we can, defined into a stipulation here which I'll have a transcript on.

MR. GOTLIEB: Being more specific, I think what we should do is have Mr. Rohleder, since he's taken notes on this, present the court with what purports to be the agreement of the parties, save and except the areas where we can't agree and if the court would make notes on those areas, then at the end come back

and deal with them one at a time and listen to what we each have to say on those, then I think we'll end up with a complete order.

The trial judge cautioned Judith and Joel Peterson to listen closely, and at the end of the hearing, each party agreed to be bound by the orally stated terms.

Shortly after the hearing, Joel Peterson dismissed his attorney. In May 1985 Burlington Northern transferred Joel Peterson to Lincoln, Nebraska. He took with him his son Adam, whose custody he received under the stipulation. The other two children are in Judith Peterson's custody.

In late May 1985, Rohleder drafted proposed findings and sent them to Gotlieb. On May 29, Gotlieb sent a letter to Joel Peterson telling him that he had received the proposed findings and that Peterson should pick up his file. On June 4, Gotlieb sent another letter to Peterson telling him to pick up the file. Peterson was then living in Nebraska and was unable to retrieve the file. In mid-June Gotlieb learned that Joel Peterson's new attorney was Arlene Vickers.

On June 25, Rohleder wrote to Gotlieb saying he would submit the proposed findings to the trial court if he did not receive some indication of Peterson's position within seven days. On July 1, Arlene Vickers wrote to Rohleder, informed him of the substitution of attorneys, and said that Peterson "is concerned about certain aspects of the stipulation that was read into the record." She also said she wanted to determine the most "expedient" procedure to resolve these issues. Rohleder apparently told Vickers in a telephone conversation that he wouldn't change the proposed findings.

On August 1, 1986, Rohleder sent the proposed findings to the trial court along with a letter detailing the post-hearing events. He enclosed the correspondence between the lawyers, including Arlene Vickers' letter addressing Peterson's concerns about the stipulation. On August 5, Arlene Vickers wrote to the trial judge asking the judge to withhold a decision for two weeks because Peterson had not yet reviewed the proposed findings. On August 7, the trial judge signed the findings of fact, conclusions of law, and order for judgment. On August 8, judgment was entered.

Joel Peterson then moved for amended findings, a new trial, and modification of child support. He alleged he did not agree to many of the terms in the decree. The trial court amended the decree to permit Joel Peterson to take Adam to Nebraska, but denied all other motions. The court awarded Judith Peterson $300 in attorney's fees.

## ISSUES

1. Did the trial court abuse its discretion in refusing to vacate certain parts of the stipulation, clarify other parts that were vague, or consider relevant matters omitted from the decree?

2. Did the trial court abuse its discretion in awarding Judith Peterson $300 in attorney's fees, and is she entitled to attorney's fees on appeal?

## ANALYSIS

### I

■ Joel Peterson contends the judgment and decree is based on a stipulation that is invalid because he did not agree to many of the terms and was not given a chance to review the proposed findings drafted by Rohleder. The decision of whether to vacate a stipulation rests largely in the discretion of the trial court, and its action will not be reversed absent a showing that the court acted so arbitrarily as to constitute an abuse of that discretion. *Anderson v. Anderson,* 303 Minn. 26, 32, 225 N.W.2d 837, 840 (1975). *See also John v. John,* 322 N.W.2d 347, 348 (Minn.1982).

In denying the amended findings the trial court said:

It seems clear that respondent did indeed have opportunity to question the stipulation in court and also had the opportunity to examine and object to the proposed

findings of fact and the decree. The *respondent by his inaction chose not to do so.* He should not now be heard to complain of the result that he agreed to be bound by.

The trial court's ruling rests on a conclusion that Peterson *could have objected* to the proposed findings, but waived the right to do so.[1]

The facts do not support a finding of waiver. Joel Peterson did not knowingly relinquish his right to examine and object to the proposed findings. He was transferred to another state and had obtained a new attorney. Neither does the record support a determination that Peterson agreed to be bound by all of the terms in the judgment and decree. The informality of the oral stipulation and the incomplete resolution of questions raised on the record at the hearing require us to examine the issues separately to determine which were stipulated.

### 1. *Pension Benefits*

■ The decree provides that Judith Peterson is granted half of "all of the pension rights of the Respondent accrued as of March 27, 1985. * * * [This] includes both Tier One and Tier Two of the Railroad Retirement Benefits that he has presently accrued." Peterson contends he did not agree to divide Tier I of his retirement benefits because, under federal law, Tier I benefits are not divisible in divorce proceedings. *See Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).

At the hearing, after Rohleder read the portion of the stipulation dividing both Tier I and Tier II of the retirement benefits, Gotlieb immediately interrupted him:

MR. GOTLIEB: Excuse me. Just a minute. Thus far I haven't intervened to point out issues. Should I be doing that now or reserve all of this?

MR. ROHLEDER: Why don't you reserve it. Let me read the whole thing.

MR. GOTLIEB: All right.

THE COURT: That would be my preference. I noted there was some agitation on your side of the table and you will have an opportunity to point that out.

The only other on-record exchange about the pension benefits was a discussion of whether they would be divided as of the date of the separation or the date of the hearing.

Jerome Gotlieb submitted an affidavit with the post-trial motions, stating:

How then to explain [that part] of the transcript which states that Railroad Retirement benefits are to be shared? This was never agreed to. I believe what happened was that when Attorney Rohleder dictated the previous sentence in the transcript stating that benefits were to be determined as of March 27, 1985, as opposed to April 20, 1981, the date the parties separated, * * * Respondent became upset. I turned to talk to him to explain that the date was one of the issues that would be determined by the Court. While distracted * * * the term Railroad Retirement benefits became part of the transcript.

The record does not show that Joel Peterson agreed to divide his Tier I retirement benefits. The trial court abused its discretion in refusing to vacate this portion of the decree.

### 2. *Flex Account.*

■ A temporary order, dated April 20, 1981, required Joel Peterson to "maintain all policies of insurance currently in force and effect." At that time Joel Peterson had a group health insurance policy through his employer that covered his spouse and children.

In 1984, his employer changed the benefit package by instituting a "Flex Account"

---

1. Joel Peterson unsuccessfully attempted to obtain the trial court's approval of a statement of the proceedings to supplement the transcript, which he said does not contain conversations in which the trial judge allegedly told him he had the right to review the written findings and make objections. However, the trial court's order quoted above indicates that the parties were given the right to review and correct the written proposed findings.

which allowed the employees a discretionary fund of $1,300 to use for unreimbursed medical expenses, profit sharing, or direct salary. The health insurance deductible was raised to $1,000. Joel Peterson elected the unreimbursed medical expense option.

On March 1, 1985, a few weeks before trial, he changed the option and elected to have the funds deposited in his profit-sharing account. He did not inform Judith Peterson of this change in coverage. As a result, the children are now covered by an insurance policy with a $1,000 deductible, and because Judith Peterson was unaware of the change, she was unable to bargain for comparable coverage, either through increased child support or through a term in the decree making him responsible for unreimbursed medical expenses.

At the hearing on March 27, 1985, the transcript reflects that he stipulated to

maintain in full force and effect without change of beneficiary or coverage, all medical coverage, hospital, dental * * * insurance presently provided to him through his current employer and through all future employers * * *. The foregoing shall include any additional benefits that are available through his employer, direct or indirect, that relate to these three children.

The decree contains identical language.

In his post-trial motion Joel Peterson asked the trial court to award him $1,300, the amount from the 1984–85 Flex Account that was apparently used to reimburse Judith Peterson for medical expenses. The trial court denied the motion, ruling that Joel Peterson violated the temporary order by changing the terms of the medical insurance policy. The temporary order clearly required him to maintain a policy at least similar to the one in existence at the time. The trial court did not abuse its discretion in interpreting the decree to require Joel Peterson to choose the medical expense option or in refusing to amend the decree.

### 3. Maintenance

■ At the hearing, the parties agreed that:

Spousal maintenance is reserved to the limited extent that it is not waived, given the fact that the Petitioner has a medical issue. Given that the Petitioner is under current medical care, the maintenance will be reserved if the current illness is cancer or directly related to her current medical condition in the opinion of her attending physician.

The decree contains almost identical language:

[S]pousal maintenance * * * is hereby reserved for future consideration to the Court; restricted to Petitioner's current medical condition or cancer, if in the opinion of her attending physician, said future medical problems are cancer or related to her current medical condition. In the event that Petitioner's future medical problems are not directly related to her current medical condition, then all future spousal maintenance for Petitioner is waived.

Joel Peterson argues that the trial court should have clarified the decree so that the reservation of maintenance is effective only if Judith Peterson is currently ill and only if such illness eventually becomes the direct cause of her being unable to support herself. This is what the decree says.

He also contends the trial court should have ordered discovery, including release of her medical records and an adverse medical examination, to permit him to ascertain what her current medical condition actually is. He did not raise this issue at the time of the hearing and clearly stipulated to the terms contained in the decree. The trial court did not abuse its discretion in refusing to amend this portion of the decree.

### 4. Child Support

■ The parties submitted the child support obligation to the court based on a stipulation that Joel Peterson's net monthly income was between $1,800 and $2,000. The court set Peterson's obligation at $600 per month, or 30 percent of $2,000 as required for two children under the guide-

lines, and refused to offset that obligation by requiring Judith Peterson to pay support for Adam. The court reasoned:

[G]iven that [Judith Peterson's] employment condition is as described, her employability is as described, the reason that I did not get into an offset for the child that is in the custody of the Respondent is * * * that there is no direct spousal maintenance being paid as of this time and there is the limited ability of the Petitioner to produce income. Taking note of the child support guidelines * *, she is under the $400 net [income category], so there really, in fact, as of this date, is nothing to offset.

On appeal Joel Peterson contends the court clearly erred in finding that Judith Peterson's limited income and employability affected her ability to pay support. He also argues that there is no record evidence on which to base the findings. This argument disregards the fact that he agreed to let the court set support based on argument of the parties and the stipulated facts. His assertion ignores the legal effect of a stipulation which, by its very nature, eliminates the need to present evidence. *See Anderson v. Anderson*, 303 Minn. at 31, 225 N.W.2d at 840 ("When the parties stipulate as to facts, the effect of the stipulation is to take the place of evidence.") The trial judge explained his reasons on the record. The court did not clearly abuse its discretion in setting the amount of support.

■ Neither the oral stipulation nor the decree addresses what should happen to the support obligation when the oldest child turns 18. The trial court refused to amend the decree to address this issue, and this refusal was an abuse of discretion. *See McClelland v. McClelland*, 359 N.W.2d 7, 11 (Minn.1984) (the trial court should establish a schedule to reduce child support as each child becomes emancipated). On remand the trial court shall clarify how the support obligation is to be reduced as the children reach the age of majority.

Finally, Joel Peterson agreed to the statutory cost-of-living adjustment, but the effective dates in the decree differ from those in the statute. The decree provides for an adjustment based on a change in the cost of living from April 1, 1985, to April 1, 1987; the statute says the adjustment becomes effective "on the first of May of the year in which it is made." Minn.Stat. § 518.641, subd. 1 (1984). On remand the trial court shall amend the decree to make the adjustment effective on May 1 rather than April 1.

### 5. *Profit-Sharing Account*

The transcript reflects that the trial court awarded Joel Peterson his profit-sharing account, containing about $4,000. The decree mistakenly calls this a credit union account. Judith Peterson conceded in her brief and at oral argument that she makes no claim to these funds.

### 6. *Title to the Condominium*

■ Joel Peterson bought a half-interest in a condominium during the separation. The property was not mentioned at the hearing or in the decree. Joel Peterson asked the trial court in post-trial motions to order Judith Peterson to sign a quit-claim deed so that title is not clouded. The trial court denied this motion without explanation.

Judith Peterson argues that the issue should not be addressed because it was not raised at trial. However, she conceded at oral argument that she claims no interest in the property. On remand the trial court shall amend the decree to award Joel Peterson his interest in the condominium and shall order Judith Peterson to sign a quit-claim deed to clear the title.

### 7. *Reimbursement of Principal Reduction on Homestead*

■ The stipulation provides that the parties agreed to sell their homestead immediately and to list it at $135,000. It provides that after certain expenses are deducted, they are to share the net equity. One of the expenses to be deducted is "reimbursement to [Judith Peterson] for

reduction in the principal balance of the mortgage from the date 4–20–84 to the date of sale." In the decree the date is changed to 4–20–81, which means she would recoup the principal reduction amounts paid since the parties separated. According to her attorney, the date in the transcript is a typographical error. Joel Peterson does not dispute this, but contends the "court cannot on its own change what was stipulated to on the record." The trial court did not abuse its discretion in refusing to amend this portion of the decree.

### 8. *Tax Deficiencies*

■ Joel Peterson claims they agreed to share any tax liability resulting from the filing of joint income tax returns and that the decree doesn't reflect this agreement.

The transcript reflects the following stipulation on income taxes:

> That the parties agree to jointly file an amended 1982 State and Federal income tax return, 1983 State and Federal income tax return, 1984 State and Federal income tax return. That from the refunds to be received from both State and Federal, the parties agree that all of their refunds shall be divided equally between them. *In the event that for any reason there is an audit and there is a deficiency or amount of taxes required to be paid back, the parties shall each be responsible for paying one-half of said sum.*

(Emphasis added). The emphasized sentence was omitted from the decree, with the result that the parties will share refunds, but their liability for deficiencies is unclear. The trial court abused its discretion in refusing to amend this portion of the decree to reflect the parties' agreement to share liabilities as well as refunds.

### II

Joel Peterson argues the trial court abused its discretion in awarding Judith Peterson $300 in attorney's fees for bringing the post-trial motions. Attorney's fees are almost entirely in the discretion of the trial court. *See Solon v. Solon,* 255 N.W.2d 395, 397 (Minn.1977). The trial court did not clearly abuse its discretion.

Judith Peterson moves this court for attorney's fees on appeal. We decline to grant her motion.

### DECISION

1. The portion of the decree dividing Tier I of Joel Peterson's retirement benefits is vacated. On remand the parties shall submit evidence of the value of the benefits and argument on the divisibility of the benefits under state and federal law.

2. The trial court abused its discretion in refusing to clarify how child support shall be reduced as the children become emancipated, when the statutory cost-of-living adjustment is effective, and how potential tax liabilities are to be shared. The court also abused its discretion in refusing to award Joel Peterson his interest in the condominium.

3. The trial court did not abuse its discretion in refusing to amend the terms regarding maintenance, health insurance, the amount of Joel Peterson's child support obligation, and the principal reduction dates in computing equity in the homestead, because the record shows that he agreed to those terms.

We affirm the attorney's fees awarded at trial and decline to award attorney's fees on appeal.

Affirmed in part, reversed in part, and remanded.