**In Re the Marriage of Helen E. McCLELLAND, Petitioner, Respondent,**

v.

**Robert Rugh McCLELLAND, Appellant.**

**No. C2–83–354.**

Supreme Court of Minnesota.

Nov. 30, 1984.

Timothy A. Sullivan, Steven R. Kruger, St. Paul, for appellant.

Judith L. Oakes, Kathleen M. Knutson, St. Paul, for respondent.

SIMONETT, Justice.

The appellant husband appeals the trial court's award of child support and permanent spousal maintenance. Concluding that the awards do not conform to the statutory criteria, we reverse and remand.

After 20 years of marriage, petitioner Helen E. McClelland commenced this dissolution proceeding against her husband, Robert Rugh McClelland. The parties were married in 1963 and had four children. At the time the dissolution decree was entered on January 3, 1983, Helen McClelland was 44 and Robert McClelland was 50 years of age. One of their four children was of age, and the other three were 16, 12 and 10 years old. The second child attained her majority in March 1984; the youngest will reach 18 in November 1990. The three youngest children have lived with their mother since the parties separated in 1978. Robert McClelland is a radiologist with a gross annual income of $230,000 and a net monthly income of $9,000. Helen McClelland, a college graduate, was the homemaker during the marriage and was not, nor is she now, employed.

Prior to trial, the parties stipulated to an equal division of the marital estate valued at $367,457. Helen McClelland's share included the home and $30,728 cash. The cash presumably will yield an annual income of $2,400. In addition, she receives about $5,600 annual income from her own nonmarital stock portfolio. The three youngest children own stock worth $65,000 under the Uniform Gift to Minors Act. The case went to trial primarily because of a child custody dispute, which necessarily left open the issues of maintenance and support. The trial court awarded custody to Helen McClelland. On appeal, the appellant husband raises only issues as to the maintenance and child support awards.

At trial, in her proposed findings, Helen McClelland asked for spousal maintenance of $1,750 a month to age 65 and child support of $850 a month per child to terminate as each child reached majority or graduated from high school, whichever occurred later. The wife's expenses for herself and the minor children were found by the trial court to be approximately $3,200 a month.

In its decree, however, the trial court awarded Helen McClelland $2,000 a month for the support of the minor children until the last child is 18, plus $2,000 a month for spousal maintenance until she "dies, remarries or further Order of the Court." The husband was also required, as additional support, to pay for the minor children's health insurance and for all medical and dental expenses of the minors not covered by insurance. Thus Dr. McClelland pays $4,000 a month or $48,000 a year until November 1990, when the youngest child is 18, and thereafter $2,000 a month or $24,000 a year for the rest of Helen McClelland's life (assuming she does not remarry). On appeal, Dr. McClelland claims that maintenance should not be permanent, that child support should decrease as each child reaches majority, and that the sums awarded are excessive—in fact, they are even more than his wife had requested.

Minn.Stat. § 518.552 (1982) sets out the criteria for an award of spousal maintenance. In this case, the trial court considered the relevant factors and properly concluded that the wife lacked sufficient property, even considering the marital property awarded to her, to provide for her reasonable needs. Subdivision 2 of section 518.552 sets out seven factors relevant to the maintenance to be paid. These include, in the case of a homemaker, "the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished." Here, prior to the marriage, Helen

McClelland had obtained a bachelor's degree in chemistry and started medical school but then dropped out. While the parties dispute the reason for the wife's termination of her medical school training, the trial court found that both parties had contemplated the wife would return to school and the record indicates the wife deferred her return to raise the children. Thus the trial court found that Helen McClelland's earning capacity had become "permanently diminished" by reason of her deferral of medical school and by her absence from the job market for the 20 years of her marriage. Considering all seven factors and in recognition of the discretion given the trial court, it cannot be said that $2,000 a month is outside the bounds of a proper maintenance award.

■ This leads to the duration of the award. Although diminished earning capacity is among the factors to be considered for an award of spousal maintenance, generally maintenance is only made permanent if the spouse "[i]s unable to adequately support himself after considering all relevant circumstances through appropriate employment * * *," and if there is little "probability, given the spouse's age and skills, of completing education or training and becoming fully self-supporting." Minn.Stat. § 518.552, subds. 1(b), 2(b) (1982). Thus in *Arundel v. Arundel,* 281 N.W.2d 663 (Minn.1979), we affirmed a permanent award after 29 years of marriage for a 51-year-old wife who had certain health problems and no vocational skills or independent resources. In *O'Brien v. O'Brien,* 343 N.W.2d 850 (Minn.1984), we noted that the trial court had properly granted a permanent award, after 30 years of marriage, to a 49-year-old wife who was a high school graduate with poor employment prospects and entrusted with the care and custody of a child severely afflicted with cerebral palsy. As we noted in *Arundel,* permanent awards are to be restricted to "certain exceptional cases" where there is little likelihood of the once-dependent spouse's attaining self-sufficiency. *Arundel,* 281 N.W.2d at 666.

We do not think that this case presents one of those exceptional situations where permanent maintenance is warranted. Helen McClelland has her B.S. degree and, while her knowledge in chemistry would now be outmoded, she has used her general education in leadership roles in civic affairs and in managing her own and her children's stock portfolios. At age 44, her vocational interest now, as the trial court found, is in the area of business and finance. She intends to pursue training in computers and expects, in some 2 to 4 years, to seek employment in business or as a stock analyst. Except for an arthritic condition which is controlled with medication, she is in good health. She is a person of considerable aptitude and ability, and as soon as the children no longer require her presence at home, she desires to seek full-time employment.

■ Under these circumstances, we conclude maintenance for a period of time (rehabilitation maintenance) rather than for a lifetime (permanent maintenance) is indicated here. Nevertheless, the older, dependent spouse who has had a lengthy "traditional" marriage presents a special situation, and the 1982 amendments to Minn.Stat. § 518.552 reflect this concern. To determine maintenance on what the present might have been but for the marriage is, at best, difficult. To base maintenance on what the future will be after the marriage dissolution, *i.e.,* on the success of the rehabilitation plans, may be no less difficult. As to the future, some of the speculative risk can be avoided. In the case of an older, dependent spouse in a lengthy "traditional" marriage, where rehabilitation maintenance is used and the contemplated success of the rehabilitation plans is not clear from the record, the trial judge should consider retaining continuing jurisdiction to revise, if necessary, the amount and duration of the maintenance. This is the approach taken in *In re Marriage of Morrison,* 20 Cal.3d 437, 573 P.2d 41, 143 Cal.Rptr. 139 (1978); *In re Marriage of Wilder,* 122 Ill.App.3d 338, 77 Ill. Dec. 824, 833–34, 461 N.E.2d 447, 456–57

(1983); and *Molnar v. Molnar*, 314 S.E.2d 73, 78 (W.Va.1984).

We reverse, therefore, the maintenance award insofar as it is permanent, and we remand to the trial court to provide for maintenance for such period of time and on such basis as will properly reflect the relevant factors set out in the statute.

■ We are also troubled by the award for child support. The trial court's decision offers no explanation why the $2,000 monthly child support payment remains the same until November 1990 even though the number of minor children to be supported decreases from three to one. Whether Dr. McClelland intends to aid his emancipated children in their postsecondary educations, outside the obligation of the decree, is not known. In any event, on the present state of the record and as the trial court's decision now reads, we conclude that on remand the trial court should also reconsider the provision for child support to the extent it continues unabated to 1990 and establish a schedule for its automatic reduction as each of the children becomes emancipated.

■ Finally, the appellant husband claims reversible error for trial court bias occurring after the trial was in progress, as well as the trial court's refusal to recuse. Appellant claims that the trial judge inappropriately interjected herself into the questioning of one of the witnesses, interrupted the testimony of appellant's expert, prematurely stopped further inquiry into the wife's marital and nonmarital assets, and refused to make a record of her comments made in chambers. Judges, of course, should be sensitive to the "appearance of impropriety" and should take measures to assure that litigants have no cause to think their case is not being fairly judged. *Jones v. Jones*, 242 Minn. 251, 64 N.W.2d 508 (1954). Nevertheless, a judge who feels able to preside fairly over the proceedings should not be required to step down upon allegations of a party which themselves may be unfair or which simply indicate dissatisfaction with the possible outcome of the litigation. In the situation we have here, on this record, neither a reversal nor a mistrial is warranted.

Reversed and remanded for further proceedings consistent with this opinion.

WAHL, Justice (dissenting in part, concurring in part).

I respectfully dissent from that portion of the majority opinion which reverses the trial court's award of permanent maintenance. For reasons I have set out at length in *Abuzzahab v. Abuzzahab*, 359 N.W.2d 12, filed today, it is clear that the legislature responded to our decision in *Otis v. Otis*, 299 N.W.2d 114 (Minn.1980), by its 1982 amendments to Minn.Stat. § 518.552, and repudiated *Otis* to the extent that it emphasized rehabilitative maintenance to the exclusion of permanent maintenance:

> Subd. 2. The maintenance order shall be * * * either temporary or permanent, as the court deems just, * * * after considering all relevant factors including:
>
> \*   \*   \*   \*   \*   \*
>
> (b) * * * [T]he probability, given the spouse's age and skills, of completing education or training and becoming fully self-supporting;
>
> \*   \*   \*   \*   \*   \*
>
> (d) The duration of the marriage, and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished.

Minn.Stat. § 518.552, subd. 2 (1982) (clarifying amendments underlined).

In light of the unmistakable legislative intent spelled out in these amendments, and under the facts of this case and of *Abuzzahab*, the trial court was not compelled, as a matter of law, as the majority holds in effect it was, to award no permanent maintenance. The facts of the two cases are remarkably similar. Among other similarities, there are 20-year marriages during which the skills of the wives became

outmoded and their earning capacity permanently diminished as they devoted themselves to full-time homemaking and child-rearing; four children, with the custody of at least two minor children with the mother; and husbands who are professionals with annual incomes of over $200,000. In both cases, the amount of maintenance would be subject to reduction when the women return to the work force full time. The trial court has continuing jurisdiction in such matters. To suggest that the trial court consider "retaining continuing jurisdiction," as the majority opinion does after reversing that court's grant of permanent maintenance, does nothing more than shift the burden of getting an attorney and going back into court onto the woman who may by that time be making $18,000-$20,000 a year, or less. There are limits, of course. In *Broms v. Broms*, 353 N.W.2d 135 (Minn.1984), we held that an award of temporary maintenance for a period longer than 5 years was an abuse of discretion where the party awarded maintenance was a 32-year-old college graduate in general good health who needed 2 years of graduate study to pursue a career in her chosen field and where nothing in the conditions and circumstances of the party's children made it appropriate to delay completion of her education and entry into the work force. That is not this case, nor is it the *Abuzzahab* case. Under the *McClelland* facts, and under the *Abuzzahab* facts, the award of permanent maintenance was not an abuse of the broad discretion of the trial court. I would affirm.

COYNE, Justice (dissenting in part, concurring in part).

I join in the dissent of Justice Wahl.