Pamela A. LOMEN, Respondent,

v.

Cordell E. LOMEN, Appellant.

No. C8–88–992.

Court of Appeals of Minnesota.

Dec. 27, 1988.

Jeffrey W. Lambert, Larson & Lambert, Wayzata, for respondent.

Christopher S. Hayhoe, Carlsen, Greiner & Law, Edina, for appellant.

Heard, considered and decided by FOLEY, P.J., and NORTON and FLEMING*, JJ.

**OPINION**

FOLEY, Judge.

Cordell E. Lomen appeals from the trial court's order denying his motion for new trial. We affirm.

**FACTS**

Appellant Cordell and respondent Pamela A. Lomen were married in 1963. Cordell has a degree in accounting and is a certified public accountant. Pamela is a chemical dependency counselor.

In May 1979, Cordell was hired by Lee Data Corporation to serve as controller of the newly formed corporation. He was employed by Lee Data from May 7, 1979 to May 1, 1986. As part of his job offer, the corporation promised him an option to purchase 5,000 shares of stock at an exercise price of $3 per share.

A written Employee Stock Option Agreement dated June 20, 1980 confirmed this promise. The option originally was to terminate May 31, 1987, and was to be exercisable to the extent of 50% of the total number of shares from and after September 15, 1981, with the balance of the shares being exercisable from and after September 15, 1982. The option would terminate if not exercisable at the time of termination of employment; it could be exercised only by Cordell; and as a condition to the exercise, Cordell had to agree that any and all shares purchased would be acquired for investment and not for resale.

Cordell received a second option grant in an Employee Stock Option Agreement dated February 20, 1981. This agreement gave him the option to purchase 500 shares of stock at a price of $8 per share. The option was first exercisable to the extent of 25% of the total number of shares from and after February 20, 1982, with 25% exercisable each year thereafter. The other conditions were similar to those on the first option.

In August 1981, the parties sought dissolution of their marriage. In November 1981, the parties met to discuss a proposed stipulation drafted by Pamela's attorney, Stewart Perry. Cordell was not represented by counsel. At that meeting, Perry asked Cordell about any additional assets owned by the parties. Cordell informed Perry that he held certain stock options in Lee Data, and that he believed the options to be worthless because they were not exercisable and were not transferable. On January 2, 1982, the parties executed a stipulation which contained no reference to the stock options.

On February 12, 1982, Cordell received an offer from Lee Data to pay each option holder the difference between the option exercise price and $14 per share for up to 25% of the options first granted. The written offer also stated that while the company intended to go public, no firm schedule had been established and an initial public offering might be two years in the future. Cordell accepted the offer and received a payment of $13,750 for 1,250 shares. He retained 3,750 shares at $3.50 per share and 500 shares at $8 per share.

On March 12, 1982, Pamela informed Cordell that the final hearing in their dissolution action would be held March 19, 1982. Cordell did not appear at this hearing and did not disclose to Pamela that he had received payment for the options or that Lee Data planned to go public in the future. A judgment and decree of divorce was entered on March 24, 1982 pursuant to the stipulation executed January 2, 1982.

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

In August or September 1982, Lee Data began to formulate plans to make a public offering of stock. Lee Data implemented a four-to-one stock split in October 1982. The exercise price also split four-for-one. Lee Data went public in November 1982, and the initial offering price was $19 per share.

Cordell exercised various options in 1983 and 1984. In July 1983, Pamela learned that he had exercised these options. Pamela brought an action in 1984 to modify the original judgment and decree to award her the reasonable value of the stock options plus interest.

In its decision in 1987, the trial court determined that Cordell had intentionally failed to disclose the value of the options in advance of the entry of the judgment and decree and entered judgment for Pamela. The trial court found the value of the stock options to be $14 per share less the exercise price of $3.50 per share on 3,750 shares and $8 per share on 500 shares. Cordell moved to amend the findings of fact and conclusions of law, or in the alternative, for a new trial on the value of the stock options.

After the hearing on the motions and before the entry of judgment, Cordell objected to the award of prejudgment interest in a letter to the trial court. Judgment was entered on January 20, 1988 in favor of Pamela in the amount of $39,296.98, including interest. Cordell's motion for new trial was denied.

### ISSUE

Did the trial court err in denying Cordell's motion for new trial on the value of the stock options?

### ANALYSIS

The decision of the trial court denying a motion for new trial will not be disturbed on appeal absent a clear abuse of discretion. *City of Ogema v. Bevins*, 341 N.W. 2d 298, 299 (Minn.Ct.App.1983). Findings of fact are not to be set aside unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge the credibility of witnesses. *See* Minn.R.Civ.P. 52.01.

Cordell argues that the trial court's finding on the question of the value of the stock options is clearly erroneous. He argues that the court improperly equated the value of the stock options with the value of stock sold by Lee Data in a private placement in February 1982. He contends that the options had no fair market value in 1982 and cites to cases holding that substantial restrictions on the sale of stock do not give the stock a fair market value capable of being ascertained with reasonable certainty. *See Helvering v. Tex–Penn Oil Co.*, 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755 (1937); *Kuchman v. Commissioner of Internal Revenue*, 18 T.C. 154 (1952). These cases arose, however, in the context of determining taxable events and are distinguishable.

Cordell also contends that under the principles established in *Salstrom v. Salstrom*, 404 N.W.2d 848 (Minn.Ct.App.1987), and *Janssen v. Janssen*, 331 N.W.2d 752 (Minn. 1983), the options do not have a determinable market value in advance of the time when the restrictions are removed. In *Salstrom*, stock options obtained during the marriage but exercisable in the future were held to have marital and nonmarital aspects which could be apportioned upon dissolution. This court followed the approach used by the supreme court in *Janssen* in determining the valuation of those options. In *Janssen*, after finding that nonvested pensions constituted marital property, the supreme court stated that

> the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid, "if, as and when" the pension becomes payable. * * * The trial court, when using this method of allocation, will retain jurisdiction and award the nonemployee spouse some percentage of the marital interest in each payment.

*Janssen*, 331 N.W.2d at 756.

Although the trial court here did not follow the formula in *Janssen* and *Salstrom* for determining the value of these options, we find that there is evidence in

the record to support the trial court's finding of a value of $14 per share. In February 1982, Lee Data sold stock to Olivetti Corporation in a private placement for $14 per share. Duane S. Carlson, the Executive Vice President of Lee Data, gave the following testimony when asked how the company determined the $14 figure:

> A: John Lee and I determined what it was going to be, and we last previously sold stock at $10 a share in a private placement and thought the next time around it ought to be higher. * * *

> Q: Was that price comparable to what you felt the fair market value of the shares were?

> A: Yes. Otherwise we wouldn't have sold it at that price.

Furthermore, the value of the stock increased well beyond $14 per share when the four-to-one split occurred in the stock and in the exercise price in October 1982. The initial offering price in November 1982 was $19 per share. Considering this increase, we cannot disagree with the trial court's valuation of the options.

■ Cordell also argues that the trial court erred in awarding prejudgment interest to Pamela. This issue was not raised in his motion for new trial, but he nevertheless contends that it should be considered because he raised it in a letter to the trial court before the motions were decided. Because this issue was not raised in the motion for new trial, we do not address it on appeal. *See Byman v. Auto–Owners Insurance Co.*, 364 N.W.2d 465, 467 (Minn. Ct.App.1985).

### DECISION

AFFIRMED.