**In re the Marriage of David John
GALES, Petitioner,
Appellant,**

v.

**Michelle Lynne GALES, Respondent.**

No. C8–95–767.

Supreme Court of Minnesota.

Sept. 19, 1996.

Camille V. Doran, Duluth, for Petitioner, Appellant.

Elizabeth A. Storaasli, Lisa D. Wilson, Bye Boyd Agnew, Ltd., Duluth, for Respondent.

Family Law Section, MN State Bar Association, Lorraine S. Clugg, Mary C. Lauhead, Edina, for Amicus Curiae.

## OPINION

ANDERSON, Justice.

Upon dissolution of the eleven-year, childless marriage between appellant David John Gales and respondent Michelle Lynne Pederson, formerly Michelle Lynne Gales, the district court ordered Gales to pay permanent maintenance of $350 per month. Gales appealed the permanent maintenance award to the Minnesota Court of Appeals, which affirmed the award. The court of appeals held that the district court did not abuse its discretion in awarding permanent maintenance because the district court "carefully and properly analyzed each statutory factor" in the maintenance statute, Minn. Stat. § 518.552 (1994). We reverse and hold that the district court abused its discretion in awarding permanent maintenance, and that under the facts and circumstances of this case, an award of rehabilitative maintenance of no longer than five years is appropriate.

The facts in this case are not in dispute. The parties, who had no children as a result of this marriage nor from any other relationship, were married in St. Louis County, Minnesota on May 14, 1983. They separated in 1993 and their marriage was dissolved on January 10, 1995.

Gales was 34 years old at the time he filed for dissolution and has two years of college education. During the marriage, he was employed as the assistant manager of a grocery store in Duluth, Minnesota, where he has worked for the past 18 and ½ years. Although he has advanced from stocker to assistant store manager for the same employer, the district court found that "[p]rospects for further advancement do not currently exist."

Respondent, Michelle Lynne Pederson, was 32 years old at the time of the filing for dissolution and is a high school graduate with no additional schooling. During the marriage, she was employed as a bank teller at various banks in Duluth, Minnesota. The district court found that she will likely receive only periodic cost-of-living increases as a teller. The court also found that without additional experience and training in the loan aspects of banking, she is probably not currently capable of earning significantly more as a bank teller. At trial, Pederson testified that she preferred not to learn about the loan aspects of banking, which are "more stressful than I want to deal with," especially now that she is experiencing considerable stress as a result of the marital dissolution.

The district court found that during the marriage the parties pooled their income and, aside from improvements to their home, spent most of their disposable income on their lifestyle. The court originally valued the parties' property at $27,445 at the time of dissolution and divided the property roughly equally. The court also awarded Pederson maintenance of $350 per month, to continue until her remarriage, her death, or further order of the court, whichever occurs first. The court based this award in part on its finding that Gales had a net monthly income of $2,003 and Pederson a net monthly income of $1,091. The court found that Pederson's reasonable monthly budget was approximately $1,550 per month. The court then concluded that it was "reasonable to assume" that Gales and Pederson would incur similar monthly expenses because they would be "living in the same geographical area, with similar rent and utility expenses." Accordingly, the court determined that Gales "will

also be assumed to have monthly expenses of approximately $1,550."

In its original memorandum of law, the court stated that an award of temporary rehabilitative maintenance was appropriate, but, by failing to designate when the payments would end, the court in effect awarded permanent maintenance. Gales moved to modify the district court's property division and maintenance order or, in the alternative, for a new trial. The court granted Gales' motion in part, awarding him an additional $914.50 from the parties' property division, but the court denied his motion for a new trial and refused to modify the award of permanent maintenance.

Gales appealed to the court of appeals, which affirmed, concluding that in awarding permanent maintenance, the district court did not abuse its discretion because it "carefully and properly analyzed each statutory factor" required by Minn.Stat. § 518.552, including Gales' "ability to meet his needs while meeting those of" Pederson.

### I.

■ The standard of review on appeal from a district court's determination of a maintenance award is whether the district court abused its discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). Gales argues that the district court abused its discretion because its award constitutes a significant departure from this court's family law jurisprudence, which has generally restricted permanent maintenance to long-term marriages where the wife has been a traditional homemaker. Gales also asserts that the district court's findings do not support an award of permanent maintenance under the statutory factors set forth in Minn.Stat. § 518.552.

Since 1974, both this court and the legislature have had numerous opportunities to address the circumstances in which one spouse should pay the other spouse maintenance upon dissolution of their marriage. In 1974, the legislature significantly altered this state's family law by enacting what is commonly known as "no-fault" divorce. Minn. Stat. § 518.06 (1974). In 1978, the legislature also replaced "alimony" with "mainte-nance" through the enactment of Minn.Stat. § 518.552. This statute set forth two preconditions which must be met before a court could award maintenance. A spouse seeking maintenance must show that he or she:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. § 518.552 (1978). Originally, this court construed section 518.552 to contain a presumption in favor of temporary rehabilitative maintenance, which provides for payments over a specified term. The legislature, though, has gradually shifted this presumption toward awarding permanent maintenance, which sets no durational limit on payments.

■ In *Otis v. Otis*, this court interpreted the 1978 version of Minn.Stat. § 518.552 and concluded that the statute should be generally construed to favor an award of temporary rehabilitative maintenance rather than permanent maintenance. 299 N.W.2d 114, 115–17 (Minn.1980). In 1982, the legislature amended the statute to clarify that maintenance shall be either temporary or permanent, and that courts should take into account a spouse's special status as a traditional homemaker in determining whether to award maintenance. The 1982 amendment added the following language to Minn. Stat. § 518.552:

The maintenance order shall be in amounts and for periods of time, *either temporary or permanent,* as the court deems just, without regard to marital misconduct, and after considering all relevant factors including:

\*      \*      \*      \*      \*      \*

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, *and the probability,*

*given the spouse's age and skills, of completing education or training and becoming fully self-supporting;*

\* \* \* \* \* \*

(d) *The duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished* \* \* \*.

Minn.Stat. § 518.552, subd. 2 (1982) (emphasis added); *see also Abuzzahab v. Abuzzahab*, 359 N.W.2d 12, 16–18 (Minn.1984) (Wahl, J., dissenting) (discussing legislative history of 1982 amendments and opining that "to the extent this court held in *Otis* that section 518.552 emphasizes rehabilitative maintenance to the exclusion of permanent maintenance, it is not good law and should not be followed").

Shortly after the legislature amended the maintenance statute in 1982, this court considered two cases arising under the 1982 amendment to Minn.Stat. § 518.552. *McClelland v. McClelland*, 359 N.W.2d 7 (Minn.1984); *Abuzzahab*, 359 N.W.2d 12. In both cases, this court reversed the district court's award of permanent maintenance. In *McClelland*, this court reversed the district court's award of permanent maintenance to a 44–year–old wife after a 20–year marriage, recognizing that "the older, dependent spouse in a lengthy 'traditional' marriage presents a special situation," but emphasizing that "permanent awards are to be restricted to 'certain exceptional cases' where there is little likelihood of the once-dependent spouse's attaining self-sufficiency." *McClelland*, 359 N.W.2d at 10. Similarly, in *Abuzzahab*, this court held that the district court abused its discretion in awarding permanent maintenance to a wife, who had been trained as a registered nurse and was presently employed as a real estate sales person, because she was capable of attaining a degree of self-sufficiency through employment. 359 N.W.2d at 14. Moreover, the court held that, under the distribution of marital property, the wife had sufficient property to provide for her reasonable needs. *Id.* As in *McClelland*, the court pointed out that "the

older dependent spouse who has a 'traditional marriage' presents a special situation." *Id.*

In response to this court's interpretation of the maintenance statute in *McClelland* and *Abuzzahab*, the legislature in 1985 again amended the maintenance statute to clarify that temporary awards should not be favored over permanent awards by adding the following subdivision to Minn.Stat. § 518.552:

Nothing in this section shall be construed to favor a temporary award of maintenance over a permanent award, where the factors under subdivision 2 justify a permanent award.

Where there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification.

Minn.Stat. § 518.552, subd. 3 (1985).

Following the 1985 amendment, this court held that an award of permanent maintenance was appropriate for a 56–year–old wife and mother with only a high school education who had been out of the labor market for 29 years while raising a family. *Nardini v. Nardini*, 414 N.W.2d 184, 197, 199 (Minn. 1987). Echoing the principle expressed in *McClelland* and *Abuzzahab* that permanent maintenance is appropriate for an older, dependent spouse in a traditional marriage, the court noted in *Nardini* that there might be no need for permanent maintenance had the wife "pursued her own business career during the marriage or had the marriage been of shorter duration and the parties younger at the time of its dissolution." *Nardini*, 414 N.W.2d at 198. The court also paid heed to the 1982 and 1985 amendments, holding that "[d]oubts with respect to duration are to be resolved in favor of permanency." *Id.* at 196.

The amendments to the maintenance statute indicate that the legislature has established with unmistakable clarity a presumption in favor of awarding permanent maintenance. But the legislature has also indicated with unmistakable clarity that in awarding permanent maintenance, a district court must consider each of the specific statutory factors set forth in the maintenance statute. The court must determine

that there are statutory factors present in order to award permanent maintenance. If the factors are not present to support an award of permanent maintenance, a court which fails to provide a termination date for maintenance payments has abused its discretion. Gales argues that the district court's findings fail to support the award of permanent maintenance.

Under current Minnesota law, a court may grant a maintenance order for either spouse if it finds that the spouse seeking maintenance:

(a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or

(b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. § 518.552, subd. 1 (1994).

This statute further provides that the maintenance order "shall be in amounts and for periods of time, either temporary or permanent, as the court deems just, without regard to marital misconduct," and sets forth eight factors to consider:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting;

(c) the standard of living established during the marriage;

(d) the duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) the loss of earnings, seniority, retirement benefits, and other employment opportunities foregone by the spouse seeking spousal maintenance;

(f) the age, and the physical and emotional condition of the spouse seeking maintenance;

(g) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance; and

(h) the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or the value of the marital property, as well as the contribution of a spouse as a homemaker or in furtherance of the other party's employment or business.

Minn.Stat. § 518.552, subd. 2.

The district court's findings under the maintenance statute are set forth below, with the court's summary of the statutory factors presented in bold-faced type:

(a) **The financial resources of the spouse seeking maintenance.** Respondent has some income, but that income is insufficient to meet her reasonable needs.

(b) **The probability of completing education or training and becoming fully self-supporting.** Respondent is employed as head bank teller. She has reached the top of her chosen profession. She has no desire or intentions of getting any further training which would enable her to advance further within the Credit Union or banking field.

(c) **The standard of living established during the marriage.** The parties testified that they enjoyed a comfortable, although not luxurious standard of living during their marriage. They took many

vacations and otherwise were involved in social activities.

(d) **The duration of the marriage.** The parties have been married 11 years (10 at the time of separation).

(e) **Employment opportunities foregone by the spouse seeking spousal maintenance.** Not applicable.

(f) **The age and physical and emotional condition of the spouse seeking spousal maintenance.** Respondent is 32 years of age. She has suffered emotional distress since the time of the separation, and has been seeing a mental health counselor.

(g) **The ability of Petitioner to meet his own needs while meeting those of Respondent.** Petitioner's net income exceeds his estimated reasonable monthly expenses by about $450.00. He can afford to pay Respondent some maintenance.

(h) **The contribution of each party toward the value of the marital property.** Petitioner contributed more financially to the homestead and other marital property, but Respondent assumed the traditional duties of homemaker in addition to her employment.

■ While we recognize the legislature's clear intention that doubts as to maintenance awards must be resolved in favor of permanency, we do not believe an award of permanent maintenance was appropriate under the facts and circumstances of this case. The district court abused its discretion in granting permanent maintenance because Pederson fails to meet several of the requisite statutory factors for an award of permanent maintenance. Under factor 2(d) (marriage duration), the court found that the "parties have been married 11 years" and apparently concluded that the marriage was long-term for maintenance purposes. We do not quibble with the court's finding that the parties' marriage was long-term. However, our family law jurisprudence establishes that, to consider an award of permanent maintenance, there must be an exceptional case such as the dissolution of a long-term traditional marriage in which there is an older, dependent spouse who has little likelihood of achieving self-sufficiency because of an absence from the labor market for a long period of time.

See *McClelland*, 359 N.W.2d at 10; *Abuzzahab*, 359 N.W.2d at 14. By contrast, Pederson has pursued her own business career, the marriage has been of shorter duration than those for which permanent maintenance is proper, and both Pederson and Gales were relatively young, in their early 30s, at the time of dissolution. See *Broms v. Broms*, 353 N.W.2d 135, 138 (Minn.1984) (reducing duration of maintenance award from ten years to five years for 32–year–old college graduate who was "capable of employment" and needed two years of studies to acquire an advanced degree upon dissolution of five-year marriage).

■ Further, we do not believe that a spouse's emotional distress caused by the dissolution should by itself provide the foundation for a permanent maintenance award. Accordingly, a troubling aspect of the district court's order is its finding that under factor 2(f) (age, physical/emotional condition), Pederson "has suffered emotional distress since the time of the separation." Pederson undoubtedly has suffered emotional distress, a regrettable yet almost inevitable result of any relational breakup. Awards of permanent maintenance, however, have generally been limited to situations where the spouse's emotional or physical condition affects the spouse's ability to be gainfully employed. See *Abuzzahab*, 359 N.W.2d at 18 (Wahl, J., dissenting) (observing that permanent maintenance would be appropriate for spouse who suffered from inflammation under kneecap, rendering it questionable whether she could perform nursing services). Pederson has presented no evidence that the stress arising from the dissolution prevents her from being gainfully employed. Although she did testify that stress prevented her from getting a higher-paying job and that she was suicidal at the time of dissolution, she suffers no permanent disability and has improved her emotional condition through counseling. Permanent maintenance is not appropriate where the spouse suffers from temporary emotional suffering which does not affect the spouse's ability to be gainfully employed.

The court's award of permanent maintenance based on its finding that under 2(f) Pederson has suffered emotional stress is

also troubling for public policy reasons. Stress and depression are endemic in most marriage dissolutions. But the purpose of the maintenance statute is not to award permanent maintenance to every aggrieved spouse who suffers. Indeed, premising a permanent maintenance award on emotional stress raises the specter that judges would subvert the purpose of the maintenance statute and of no-fault divorce by financially penalizing the party who "caused" the other spouse to suffer by seeking marriage dissolution. However painful it may be for the parties, marriage dissolution is not a tort for which a victim can be compensated; penalizing the "perpetrator" through the pocketbook by awarding permanent maintenance would subvert the underlying policy of no-fault divorce enacted by the legislature of this state.

In light of the statutory factors set forth in Minn.Stat. § 518.552, we conclude that the district court abused its discretion in awarding permanent maintenance. Rather, an award of temporary rehabilitative maintenance is appropriate under the statutory factors. Indeed, the court in its memorandum of law stated that *rehabilitative,* not *permanent,* maintenance was proper. Although the court stated it was appropriate to award Pederson rehabilitative maintenance, it left the award open in duration, thus making it permanent. We agree with the court that some form of maintenance is proper due to the standard of living established during the marriage and all other relevant circumstances. We hold, however, that an award of rehabilitative maintenance of no longer than five years is appropriate under the facts and circumstances of this case. We remand to the district court for a modification of the court's order consistent with our holding.

## II.

█ Subsequent to the filing of this appeal, Pederson brought a motion requesting that this court award attorney fees, costs and disbursements relating to this appeal.[1]

Under Minnesota law, a court may award attorney fees, costs and disbursements "in an amount necessary to enable a party to carry on or contest" a proceeding, providing the court finds:

(1) that the fees are necessary for the good-faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;

(2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and

(3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

Minn.Stat. § 518.14, subd. 1 (1994).

Pederson asserts that under factor (1), because she is "left with no choice but to incur additional attorney fees in the defense" of the present appeal, attorney fees are necessary for the good-faith assertion of her rights. Pederson argues that under factor (2), Gales has the means to pay attorney fees because even after subtracting the maintenance obligation of $350 and monthly expenses of $1,550 from his monthly income of $2,003, he is left with excess income of $103 per month. Under factor (3), Pederson asserts that she does not have the means to defend this appeal because even with the district court's award of maintenance, she is unable to meet her reasonable monthly expenses. Moreover, Pederson points out that her attorney fees incurred prior to her appeal substantially depleted her property award. Pederson argues that she does not have the means to pay these additional attorney fees and that if she must pay attorney fees, costs and disbursements incurred in defending this appeal, her property award will be extinguished completely.

Gales counters that Pederson fails to satisfy the requirements of Minn.Stat. § 518.14. Gales argues that his income and expenses have undergone a substantial change since the dissolution such that he does not currently have income which exceeds his living expenses and therefore does not have the ability to pay Pederson's attorney fees and costs. He also argues that Pederson provides no current information on her income and ex-

---

1. The district court ordered Gales to pay Pederson attorney fees in the amount of $1,000.

penses, does not clarify which costs and attorney fees were incurred solely for review by this court, has waived her right to request costs and fees in the proceedings in the court of appeals, and has failed to provide evidence indicating that Gales has the ability to pay her attorney fees and costs. Finally, Gales argues that his appeal has been brought in good faith.

Gales' arguments are persuasive. Pederson has not provided this court with current information on her income and expenses. *See J.A.S. v. R.J.S.*, 524 N.W.2d 24, 27 (Minn. App.1994) (current income information necessary to determine whether attorney fees are awarded). Moreover, Gales' arguments are neither frivolous nor asserted in bad faith. *See Dabrowski v. Dabrowski*, 477 N.W.2d 761 (Minn.App.1991) ("[f]ee awards under Minn. Stat. § 518.14 may be based on the impact a party's behavior has had on the costs of litigation regardless of the relative financial resources of the parties").

We conclude that Pederson is not entitled to attorney fees pursuant to Minn.Stat. § 518.14.

Reversed and remanded.

STRINGER, Justice (dissenting).

The evolution of the spousal maintenance statute, Minn.Stat. § 518.522, has been well documented by the majority and in other opinions of this court,[1] and little would be served by covering this ground again. In summary, it has been a history of legislative policy increasingly broadening the discretion of the trial court to award temporary or permanent maintenance in dissolutions in response to what the legislature seems to have perceived to be unduly restrictive interpretations of section 518.522 by this court. Because the majority opinion here seems to once again ignore these declarations of legislative policy and, in my opinion, the trial court's appropriate application of section 518.522 to the facts here, I respectfully dissent.

The trial court has broad discretion in determining the duration and amount of maintenance, and our standard of review is that the trial court's determination must be affirmed unless the court abused its discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). We have previously noted that "[t]here must be a clearly erroneous conclusion that is against logic and the facts on record before this court will find that the trial court abused its discretion." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). "Each case must be determined on its own facts and no single statutory factor for determining the type or amount of maintenance is dispositive." *Broms v. Broms*, 353 N.W.2d 135, 138 (Minn.1984); *see also, Erlandson*, 318 N.W.2d at 39.

In *Nardini v. Nardini*, we stated that "[a]n award of temporary maintenance is based on the assumption that the party receiving the award not only should strive to obtain suitable employment and become self-supporting but that he or she will attain that goal." 414 N.W.2d 184, 198 (Minn.1987). If there is "some uncertainty as to the necessity of a permanent award, the court *shall* order a permanent award leaving its order open for later modification." Minn.Stat. § 518.552, subd. 3 (1994) (emphasis added). In considering the statutory factors, the trial court here found that: Pederson's income is insufficient to meet her reasonable needs; she has "reached the top of her chosen profession" with "no desire or intentions of getting further training"; the parties enjoyed a comfortable standard of living; the parties had been married 11 years; Pederson has been seeing a mental health counselor for emotional distress; and Gales' net income exceeds his estimated reasonable monthly expenses by about $450. The trial court further found that Pederson probably was not capable of earning significantly more money as a bank teller and would likely receive only periodic cost of living increases.

Based on these findings, I find it difficult to conclude that the trial court abused its broad discretion and reached "a clearly erroneous conclusion that is against logic and the facts" in determining that there is some uncertainty as to whether Pederson will become self-supporting. *See Rutten*, 347 N.W.2d at

---

1. *See, e.g., Abuzzahab v. Abuzzahab*, 359 N.W.2d

12, 16–18 (Minn.1984) (Wahl, J., dissenting).

50. When the need for permanent maintenance is not clear, "the delicate balancing of property division and spousal maintenance necessary to place the parties in comparable financial positions is reserved to the good judgment of the trial court." *Nardini*, 414 N.W.2d at 199. It is not this court's role to substitute its own judgment under the circumstances here.

KEITH, Chief Justice, concurring.

I concur in Justice Stringer's dissent.