In re the Marriage of Paul
W. CHAMBERLAIN,
petitioner, Appellant,

v.

Mary Lou CHAMBERLAIN,
Respondent.

Nos. C5–99–1934, C9–00–115.

Court of Appeals of Minnesota.

Aug. 8, 2000.

 

Becky Toevs Rooney, Minneapolis, for appellant.

Jerrold F. Bergfalk and Sandra Suzanne Smalley, Lindquist & Vennum, Minneapolis, for respondent.

Considered and decided by
AMUNDSON, Presiding Judge,
CRIPPEN, Judge, and ANDERSON,
Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant and respondent challenge various district court orders arising from their dissolution proceedings. We affirm those orders with respect to the nonmarital character of respondent's townhouse proceeds and her share of appellant's income-tax liability. We do not reach appellant's claim that the homestead equity is a nonmarital asset because that issue is not properly before us. We also affirm the district court's award to respondent of marital property equal to the appreciation on appellant's premarital contributions to his retirement plan. We affirm the award of permanent maintenance as to duration, but reverse as to the amount and remand for further proceedings. Finally, we deny respondent's motion for attorney fees. Accordingly, we affirm in part, reverse in part, and remand.

## FACTS

Appellant Paul W. Chamberlain and respondent Mary Lou Chamberlain, both now 50 years old, sought to end their 20-year marriage by a dissolution petition filed January 21, 1998. The parties have two sons, now ages 13 and 19. Both appellant and respondent have enjoyed successful careers. He is an attorney in solo practice, and her master's degree has furthered her career as a second-grade teacher in a suburban school district. They earn about $200,000 and $63,000 per year, respectively. Appellant enjoyed increased, but out-of-the-ordinary, income totaling

$335,000 in 1994 and $426,000 in 1996. Respondent has worked as a teacher since 1971, except for a five-year period following the birth of their first son.

To say that the parties experienced an affluent lifestyle is an understatement of the facts. The record contains references to: (1) the parties' Lake Minnetonka home that sold in November 1999 for nearly $1.3 million (the parties have owned several homes, each on Lake Minnetonka); (2) numerous vacations, including biannual cruises, annual Hawaiian Christmas trips, and travel to ski destinations such as Vail, Colorado; (3) dining at expensive restaurants several times each week; (4) memberships at athletic and social clubs; (5) expensive designer and custom-made clothing; (6) luxury vehicles; and (7) frequent elective cosmetic surgeries.

At dissolution, the parties had approximately $900,000 in assets, exclusive of the anticipated homestead proceeds. A large percentage of these assets were in retirement accounts; only about twenty percent were easily converted to cash. Although the parties built equity in their home and retirement plans during their marriage, they also borrowed liberally and incurred considerable debt. The parties entered 1999 with more than $100,000 in consumer debt; that figure does not include the mortgage debt or the more than $100,000 in income-tax appellant owed for tax years 1997 and 1998.

The district court apportioned the parties' assets and debt. As part of the property division, the district court ordered the sale of the Lake Minnetonka homestead and payment of unsecured debt with the proceeds. The parties stipulated, based on a neutral appraisal, that they expected the home to sell for $1 million. The district court ordered appellant to pay the mortgage on the home until the property sold.

After debt payments, the approximately $1.3 million in marital property was distributed nearly equally. The district court awarded respondent, as nonmarital property, the $35,000 proceeds from the sale of her premarital townhouse. The district court refused, however, to award appellant appreciation on his premarital Keogh-plan contributions as a nonmarital asset. The district court awarded respondent permanent maintenance of $2,400 per month.

After the April 1999 dissolution trial, the district court issued its findings of fact, conclusions of law, and order. Appellant and respondent both filed motions for amended findings of fact, conclusions of law, and new trial. Appellant raised many issues, but did not claim a nonmarital interest in any home equity built by mortgage payments he made before the homestead property sold. The district court disposed of the post-trial motions and, in August 1999, filed its amended findings of fact, conclusions of law, and judgment.

The parties dispute several aspects of the judgment. Appellant argues that the district court abused its discretion or erred by: (1) awarding respondent permanent maintenance; (2) failing to recognize the appreciation on his premarital Keogh-plan contributions as nonmarital property; and (3) characterizing respondent's $35,000 townhouse-sale proceeds as nonmarital property. Respondent argues that the district court abused its discretion by requiring her to share appellant's income-tax liability, and, on appeal, filed a motion for attorney fees.

Appellant filed his appeal in November 1999 and simultaneously moved the district court for, among other things, modification of maintenance based on the sale of the family homestead for far more than the stipulated value and reimbursement for the home equity built by post-valuation-date mortgage payments he made before the marital home sold in mid-November 1999. The district court, in a December 9, 1999, order, found itself without jurisdiction over the home-equity issue because it was not raised in appellant's motion for new trial. The district court continued the maintenance issue pending the outcome of this appeal. Appellant filed an appeal

from that order, which this court consolidated with his first appeal.

## ISSUES

I. Did the district court abuse its discretion by awarding respondent permanent spousal maintenance?

II. Did the district court err in its determinations of whether property was marital or nonmarital?

III. Did the district court abuse its discretion by requiring both parties to share appellant's income tax liability?

IV. Is respondent entitled to attorney fees on appeal?

## ANALYSIS

### I.

■ Appellant first claims that the district court abused its discretion by awarding appellant permanent maintenance of $2,400 per month. Appellant argues that respondent is not a suitable candidate for permanent maintenance because she has had, throughout the 20-year marriage, her own successful career as a teacher and presently earns the top salary in her profession—more than $63,000 annually. Appellant contends that because respondent does not need rehabilitation to become self-sufficient, and has significant financial resources available to her, she is not in need of maintenance, let alone permanent maintenance. Our standard of review from the district court's determination of the maintenance award is whether the district court abused its wide discretion. *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982). We will not find an abuse of discretion absent "a clearly erroneous conclusion that is against logic and the facts on record." *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984).

Spousal maintenance is an award of "payments from the future income or earnings of one spouse for the support and maintenance of the other." Minn.Stat.

§ 518.54, subd. 3 (1998). Maintenance may be granted if the spouse seeking maintenance demonstrates that he or she:

(a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or

(b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. § 518.552, subd. 1 (1998).

■ When determining the amount and duration of maintenance, district courts must consider all relevant factors, including factors that address the financial resources of the spouse seeking maintenance to provide for his or her needs independently, the time necessary to acquire education to find appropriate employment, the age and health of the recipient spouse, the standard of living established during the marriage, the length of the marriage, the contribution and economic sacrifices of a homemaker, and the resources of the spouse from whom maintenance is sought. Minn.Stat. § 518.552, subd. 2(a)-(h) (1998). In the questionable case, the statute directs that the district court order permanent maintenance, leaving the order open for later modification. Minn.Stat. § 518.552, subd. 3 (1998). Maintenance-related findings of fact are not set aside unless clearly erroneous. *McCulloch v. McCulloch,* 435 N.W.2d 564, 566 (Minn.App.1989).

■ The district court found that the parties' standard of living reflected a lifestyle that was beyond their means and reduced or eliminated some of respondent's claimed reasonable expenses, such

as elective surgery and dining at high-priced restaurants. And, rather than compute respondent's mortgage expense at the marital mortgage expense of $5,400, the district court set $2,000 as respondent's reasonable mortgage expense. Despite these reductions, the district court, in a detailed and thoughtful review of the evidence, determined that the facts supported a permanent maintenance award.

The district court explained,

> [t]he simple fact of the matter is that Respondent needs spousal maintenance in order [to] duplicate a standard of living that already represents a substantial reduction from the standard of living born of deficit spending.

Considering the marital standard of living that would have been within the parties' means, the district court found respondent's and her unemancipated son's reasonable monthly expenses to be $6,627. Respondent's monthly income of $3,046 and the $1,483 child-support award did not cover the reasonable expenses as determined by the district court. The district court found that appellant was able to pay monthly maintenance. Appellant's monthly needs of $6,846 left nearly $6,000 of monthly after-tax income with which to support respondent and their youngest son. The district court awarded respondent permanent monthly maintenance of $2,400.

In order to properly understand the result reached by the district court here, and affirmed in part by this court, some historical perspective is helpful. In 1984, the then-existing maintenance statute was functionally read as disfavoring permanent maintenance; appellate decisions made the existence of an "exceptional case" a prerequisite for an award of permanent maintenance. *See, e.g., McClelland v.*

*McClelland,* 359 N.W.2d 7, 10 (Minn.1984) (stating permanent maintenance awards "are to be restricted" to "exceptional cases" involving a dependent spouse with little likelihood of becoming self-sufficient). Here, appellant challenges the district court's refusal to apply the "exceptional-case" standard for determining whether respondent's maintenance award should be permanent.

■ Since *McClelland,* the maintenance statute has been amended several times. The history of those amendments, and the associated case law, is set out elsewhere and need not be discussed in detail here. *See, e.g., Gales v. Gales,* 553 N.W.2d 416, 418–20 (Minn.1996); *Abuzzahab v. Abuzzahab,* 359 N.W.2d 12, 16–18 (Wahl, J., dissenting). Here, we simply note that the 1985 amendments altered Minn.Stat. § 518.552, subds. 1, 2, to require a district court, when considering maintenance questions, to consider the parties' marital standard of living. 1985 Minn. Laws ch. 266, § 2. We note that the marital standard of living is an important part of the analysis; it was inserted into the maintenance statute as a required consideration at not just one, but three, places. Minn.Stat. § 518.552, subds. 1(a), (b), 2(c). The 1985 amendments also added Minn.Stat. § 518.552, subd. 3, stating that when evaluation of the factors in Minn.Stat. § 518.552, subd. 2, produce uncertainty about the need for permanent maintenance, that uncertainty "shall" be resolved in favor of a permanent award left open for future modification. 1985 Minn. Laws ch. 266, § 2; *see* Minn.Stat. § 645.44, subd. 16 (1998) (stating " '[s]hall' is mandatory"). While appellant cites various decisions discussing the "exceptional-case" standard for permanent maintenance, most of those cases predate the statutory amendments.[1]

---

1. *See, e.g., Arundel v. Arundel,* 281 N.W.2d 663, 666–67 (Minn.1979) (affirming permanent award in the "exceptional case" of a 51-year-old wife, married 29 years, who had health problems and no vocational skills or independent resources); *Abuzzahab,* 359 N.W.2d at 14 (reversing award of permanent maintenance to wife, married over 20 years, finding she was capable of attaining self-sufficiency through employment); *McClelland,* 359 N.W.2d at 10–11 (reversing award of permanent spousal maintenance to wife, age

The purpose of the 1985 amendments was to eliminate the negative presumption against permanent maintenance. *See Nardini v. Nardini,* 414 N.W.2d 184, 196–97 n. 10 (Minn.1987) (discussing legislative history of 1985 amendments). Thus, in light of those amendments, pre–1985 amendment cases are of limited value in construing and applying the amended statute, at least with regard to the duration of a maintenance award.

Appellant also cites the portion of the post-amendment *Gales* opinion stating:

> [O]ur family law jurisprudence establishes that, to consider an award of permanent maintenance, there must be an exceptional case such as the dissolution of a long-term traditional marriage in which there is an older, dependent spouse who has little likelihood of achieving self-sufficiency because of an absence from the labor market for a long period of time.

553 N.W.2d at 421.

One year following release of the *Gales* decision, apparently fearing misinterpretation of the "exceptional-case" language of *Gales,* the supreme court made clear that the holding in *Gales* should not be taken out of context because

> *Gales* did not change the law, but instead applied the criteria of Minn.Stat. § 518.552, subd. 2 to the record. We take this opportunity to remind counsel that each marital dissolution proceeding is unique and centers upon the individualized facts and circumstances of the parties and that, accordingly, it is unwise to view any marital dissolution decision as enunciating an immutable rule of law applicable in any other proceeding.

*Dobrin v. Dobrin,* 569 N.W.2d 199, 201 (Minn.1997).

Thus, while *Dobrin* dispels any suggestion that *Gales* resurrected *McClelland's* "exceptional-case" standard for awarding permanent maintenance, *Dobrin* also makes clear that permanent maintenance awards are considered in light of the factors set forth in Minn.Stat. § 518.552 subd. 2.

Our analysis of the permanent maintenance issues in this appeal breaks down in to two parts: first, we consider whether the award of permanent maintenance is within the wide discretion given to the district court. Appellant correctly notes that there are no appellate decisions in Minnesota affirming an award of permanent maintenance with a fact pattern similar to the present controversy. But the analysis does not stop with this observation. The district court correctly focused on the standard of living of the parties, a standard of living arrived at jointly and experienced by the parties for many years, in determining that permanent maintenance was appropriate and made findings that appellant's income was sufficient to support a permanent maintenance award. The district court correctly noted that the legislature could have excluded an affluent lifestyle as a consideration but chose not to do so. Indeed, a review of the legislative history reveals that the legislature amended the maintenance statute to expand the definition of "reasonable needs," as well as "adequate self support" to include specifically a consideration of the standard of living established during the marriage. Minn.Stat. § 518.552, subd. 1 (1985).

What is at issue in this case, and what is unresolved by the statutory language and the decisions of the appellate courts of Minnesota, is whether the permanent-maintenance "factors" are equal in terms of the weight to be assigned to each or

44, a homemaker during a 20–year marriage). We also note that appellant cites unpublished opinions of varying dates to support his argument. Unpublished opinions are of limited value in deciding an appeal. *See* Minn.Stat. § 480A.08, subd. 3(c) (1998) ("[u]npublished opinions of the court of appeals *are not prece-* *dential* ") (emphasis added); *Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800–01 (Minn. App.1993) (stating dangers of mis-citation and unfairness associated with use of unpublished opinions and that while persuasive, "[t]he legislature has unequivocally provided that unpublished opinions are not precedential").

whether some should be more significant than others. *See, e.g., Erlandson,* 318 N.W.2d at 39 (remarking that "no single factor for determining the type or amount of maintenance is dispositive"). Appellant argues, with more than a little persuasive logic, that the district court judgment here determines, in effect, that standard of living is a "trump card" overruling other factors which in this case would normally not support an award of permanent maintenance. Respondent is in good health, 50 years old, at the top of her teaching career, did not play the role of a traditional homemaker for most of the marriage, needs no further education or rehabilitation, and does not suffer health problems that affect her ability to work. In addition, she received a substantial property award as a result of the dissolution.

But, to adopt appellant's view of the law would essentially eliminate the statutorily required consideration of the marital standard of living from the maintenance analysis. *See, e.g.,* Minn.Stat. § 645.16 (1998) (requiring laws to be construed, if possible, to give effect to "all" provisions and stating that "the letter of the law shall not be disregarded under the pretext of pursuing the spirit").

█ It is our conclusion that, absent further direction from the legislature or the supreme court, the long-standing affluent lifestyle of the parties is an appropriate factor for the district court to consider, and given the court's findings regarding appellant's income and the wide discretion afforded the district court, we affirm the award of permanent maintenance in this case. While a different result is supportable, and we might have reached a different result, on this record we cannot say an award of permanent maintenance is an abuse of discretion.

█ We turn next to the second part of our analysis: the amount of maintenance awarded by the district court. Here, we do find an abuse of discretion and reverse and remand to the district court for further proceedings.

The district court properly discarded numerous examples of unreasonable spending claims that respondent sought to include as part of the alleged standard of living of the parties. Nonetheless, the district court used as its basis in arriving at a maintenance amount a claimed monthly housing allowance for respondent of $2,000, notwithstanding that respondent had at least $150,000 in equity to use as a down payment. The housing needs here are for two people, soon to be one person as the youngest child achieves the age of majority, and given the other assets awarded to respondent in the dissolution proceeding, permanent maintenance in the amount of $2,400 per month is excessive and an abuse of discretion.

█ Further, the homestead of the parties has now sold for approximately one-third more than anticipated and the effect of these additional proceeds will be, at a minimum, to nearly double the amount of monies available to respondent for down-payment purposes. While this record clearly supports a housing allowance as a component of a permanent-maintenance award, the amount of maintenance awarded by the district court is excessive and we reverse and remand.

## II.

█ Appellant next contends that the district court erred by: (1) failing to recognize the appreciation of his premarital Keogh-plan contributions as a nonmarital asset; (2) recognizing respondent's townhouse proceeds as nonmarital assets; and (3) failing to recognize some post-valuation home equity as appellant's nonmarital property. District courts have broad discretion over the division of marital property, and we will not disturb the division on appeal absent a clear abuse of discretion. *Bogen v. Bogen,* 261 N.W.2d 606, 609 (Minn.1977). Whether property is marital or nonmarital is a question of law, but reviewing courts defer to the dis-

trict court's findings of fact unless they are clearly erroneous. *Olsen v. Olsen,* 562 N.W.2d 797, 800 (Minn.1997). The party claiming a nonmarital interest in property must prove the necessary facts by a preponderance of the evidence. *Campion v. Campion,* 385 N.W.2d 1, 5 (Minn.App. 1986).

■ "Marital property" includes all property acquired during the marriage. Minn.Stat. § 518.54, subd. 5 (1998). "Nonmarital property" includes all property acquired before marriage and the increase in value of that property. Minn.Stat. § 518.54, subds. 5(b), (c) (1998). Increases in the value of nonmarital property due to the "entrepreneurial decision-making" efforts of one or both spouses during the marriage are considered marital property. *White v. White,* 521 N.W.2d 874, 878 (Minn.App.1994); *see also Nardini v. Nardini,* 414 N.W.2d 184, 192 (Minn.1987).

■ But increases in value of nonmarital property remain nonmarital if shown to be attributable "solely to market forces or conditions, such as simple appreciation in value of an asset." *White,* 521 N.W.2d at 878. Upon dissolution, a spouse is entitled to receive the original nonmarital asset and any passive appreciation in value. *Johnson v. Johnson,* 388 N.W.2d 47, 49 (Minn.App.1986). *Swick v. Swick* offers the example of a painting, brought into the marriage by the wife as nonmarital property. 467 N.W.2d 328, 331 (Minn.App.1991) *review denied* (Minn. May 16, 1991). Over time, the painting appreciates in value, and that appreciation is not severable from the asset, so it remains nonmarital. *Id.* In contrast, income from an investment, such as income from active improvement or management of real property, is an asset acquired during the marriage and is marital property. *Id.*

### A. Appellant's Keogh Plan

■ Appellant claims a nonmarital interest in the appreciation on his premarital contributions to his Keogh retirement plan. Appellant's retirement funds were invested in a Keogh plan administered by an investment advisor. Appellant's premarital contributions to the plan totaled $8,656.94; appellant's investment advisor calculated the appreciation on that amount to be $119,694.61.

The district court determined that the appreciation associated with appellant's nonmarital contributions was marital property because appellant maintained control over the investments in the plan before and during the marriage through the investment advisor. As an alternative basis for the award, the district court noted the five years respondent was out of the labor market and the fact that respondent forfeited more than $100,000 in pension benefits that otherwise would have been earned had she been able to remain in the labor market during the time she maintained the family home. Because of the economic costs associated with respondent's five-year absence from the labor market, the district court did not abuse its discretion by awarding respondent marital property in an amount corresponding to the appreciation on appellant's premarital Keogh contributions. *See* Minn.Stat. § 518.58, subd. 1 (1998) (requiring just and equitable property division); *Ruzic v. Ruzic,* 281 N.W.2d 502, 505 (Minn.1979) (concluding court's division of marital property need not be mathematically equal, but need only be just and equitable). Accordingly, we affirm the district court's property division and we do not reach the issue of whether or not the district court correctly treated this asset as marital based on appellant's alleged management of the funds.[2]

2. Although the treatment of this nonmarital asset as marital by the district court based on the alleged active management of the account by appellant's agent is troubling for several reasons, it is not necessary to settle this question to affirm the treatment of this asset and, accordingly, we leave for another day the resolution of the active-management issue.

## B. Townhouse Proceeds

■ Appellant argues that the district court erred by awarding respondent, as nonmarital property, $35,000 earned from the sale of her premarital townhouse. Appellant does not dispute that respondent owned the townhouse, but contends that the $35,000 cannot be traced into any existing assets. The record contains a $35,000 check payable to respondent, which she testified represented the proceeds from the townhouse sale that were placed in an account administered by appellant's investment advisor.

The district court found respondent's testimony credible, and we have held credible testimony sufficient to prove a nonmarital claim. *See Danielson v. Danielson*, 392 N.W.2d 570, 572 (Minn.App.1986); *see also Doering v. Doering*, 385 N.W.2d 387, 390–91 (Minn.App.1986) (district court is in the best position to determine credibility). Moreover, the district court granted appellant the same latitude in tracing his premarital home interests despite the absence of some documentation. The district court did not err in finding the $35,000 to be respondent's nonmarital property.

## C. Homestead Equity

■ Appellant asks this court to recognize and award him nonmarital homestead equity built by the mortgage payments he made after the valuation date, but before the Lake Minnetonka home was sold. Appellant did not raise this issue in his motion for new trial and amended findings, even though the district court's original order set his mortgage-payment obligation. Because this issue was not raised in the motions for new trial, we are precluded from addressing it on appeal. *See Lomen v. Lomen*, 433 N.W.2d 142, 145 (Minn.App.1988) (issues not raised in motions for new trial may not be addressed by this court).

## III.

■ Respondent argues that the district court abused its discretion by requiring her to share appellant's income-tax liability. The district court reasoned that because the nonpayment of appellant's income taxes gave respondent more discretionary income to spend, she ought to share the debt. Respondent hypothesizes that appellant stopped paying his income tax in 1998 once he "saw the dissolution occurring."

■ The record does not support that conclusion, but instead shows that the parties typically paid taxes one or two years late. Additionally, further complicating respondent's argument is her refusal to file joint tax returns for 1997 and 1998, which would have decreased the parties' collective tax liability. Debts, like assets, are apportionable, and each division of property is considered in the light of the particular facts of that case. *Lenzmeier v. Lenzmeier*, 304 Minn. 568, 571, 231 N.W.2d 71, 74 (1975); *Filkins v. Filkins*, 347 N.W.2d 526, 528–29 (Minn.App.1984); *see also Dahlberg v. Dahlberg*, 358 N.W.2d 76, 80 (Minn.App.1984) (holding that, in equity, the district court may apportion all the debt to one party even though the other party receives the benefit of payment). Appellant's failure to pay taxes timely freed up cash that both parties spent. The district court did not abuse its discretion by ordering that respondent share the resulting debt.

## IV.

■ Finally, respondent moves this court for attorney fees on appeal based on Minn.Stat. § 518.14 (1998), which permits an award if "necessary" to enable a party to contest a matter. A party seeking attorney fees must establish that he or she lacks the resources to pay the required fees and that the party against whom a fee award is sought has those resources. *Id.* After a careful review of the record, we conclude that respondent has sufficient re-

sources to pay her own attorney fees and deny her motion.

## DECISION

The district court did not abuse its broad discretion by determining that respondent is in need of permanent maintenance, but we reverse and remand as an abuse of discretion the district court's determination that respondent needs monthly spousal maintenance of $2,400. The district court acted within its broad equitable discretion in awarding respondent marital property in an amount corresponding to appellant's premarital Keogh-plan contributions. Additionally, the district court correctly held that respondent's townhouse proceeds were her nonmarital property and properly required her to share appellant's income-tax liability. Because appellant did not raise his nonmarital claim to homestead equity built by his mortgage payments in his motion for new trial, we decline to review it. Finally, we deny respondent's motion for attorney fees.

**Affirmed in part, reversed in part, and remanded; motion denied.**