In Re the Marriage of Sandra
K. WHITE, Petitioner,
Appellant,

v.

Donald R. WHITE, Respondent.

No. C5–94–683.

Court of Appeals of Minnesota.

Sept. 20, 1994.

Carl E. Norberg, St. Paul, for appellant.

Patricia A. O'Gorman, Cottage Grove, for respondent.

Considered and decided by RANDALL, P.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge.

Appellant Sandra White, now known as Sondra Carter, challenges the trial court's dissolution decree awarding ex-husband Donald White a portion of the increase in retirement plan and annuity values attributed to White's premarital investments. Carter also challenges the order for payment of attorney fees. We affirm.

## FACTS

The relevant facts of this case are undisputed. Sandra and Donald White married in 1986 and dissolved their marriage in 1992. Sandra White changed her name to Sondra Carter. At a prehearing conference, the parties negotiated and agreed to a settlement for the division of most marital assets. The parties reserved for court determination the issues of attorney fees and the division of a retirement plan and an annuity acquired by Donald White prior to the marriage.

White began participating in the retirement plan in 1965 as an employee of the United Theological Seminary. The plan consists of two accounts referred to as the Teacher Insurance Annuity Association/College Retirement Equities Fund ("TIAA/CREF"). Under the TIAA/CREF, a participant initially elects how investments will be made. After the initial election, the participant has no further control over the investments. Neither account provides for advancements or cash withdrawal. Contributions and earnings are unavailable until the participant terminates employment or retires.

The TIAA is a traditional account with a guaranteed principal and a specified interest rate. The TIAA value increases over time due to participant contributions and earnings on the contributions. The CREF offers variable annuities with a fluctuating interest rate. The CREF account increases by participant contributions, earnings on contributions, and by increases in the portfolio value of the CREF investments. Both accounts are ERISA-qualified plans, the income from which is deferred and taxed when distributed.

The parties agree the combined nonmarital value of the TIAA/CREF at the date of marriage is $94,739.43. The trial court found the total value of both accounts at dissolution (the valuation date) was $244,072.64. The court also found the total TIAA/CREF value at dissolution would have been $193,975.42 had White terminated employment and made no further contributions to either account after the date of marriage. The difference between nonmarital value at the date of marriage ($94,739.43), and value at dissolution had no contributions been made during the marriage ($193,975.42), was characterized by the court as nonmarital property attributable to the increase in value of White's premarital investments. The marital portion of the ac-

counts was calculated by subtracting the non-marital value ($94,739.43), and the increase in value attributed to premarital investment ($99,235.99), from the total value at dissolution ($244,072.64). The court divided the remainder, $50,097.22, as marital property, finding that this amount is the result of contributions made by both parties during marriage.

White also acquired an annuity prior to marriage. The parties agree the nonmarital value of the annuity at the date of marriage was $21,530. The court found the value of the annuity at dissolution was $50,702. The court also found the value at dissolution would have been $36,215 had White made no further contributions after the date of marriage. As with the TIAA/CREF, the court attributed the difference between the non-marital annuity value at the date of marriage, and value at dissolution had no marital contributions been made, to White's premarital investments. The marital portion of the annuity was calculated by subtracting nonmarital value at the date of marriage ($21,530), and the amount attributed to an increase in value of premarital investments ($14,685), from the total value at dissolution ($50,702). The court divided the remaining $14,487 from the annuity as marital property.

The trial court also ordered Carter to pay attorney fees. Throughout the day of the scheduled final hearing, both parties, while represented by counsel, negotiated and agreed to several "mini" property settlements. Each "mini" settlement was reduced to writing, signed, and filed with the court. At the hearing, the settlements were dictated before the court and entered into the record. At the close of the hearing, the trial judge asked Carter if she voluntarily agreed to each settlement, and she responded, "under duress; yes." The court refused to accept any settlement claimed to have been made while under duress. Carter met with her counsel during a brief recess. She then informed the court that she understood the settlements and wished to accept them freely and voluntarily.

Two weeks after the hearing, Carter sent the trial judge a letter *ex parte* asking the court not to sign the final order. She criticized the attorney who represented her at the final hearing and requested a new hearing or a trial. The court vacated the settlements and scheduled an evidentiary hearing. At the hearing, Carter withdrew her request to vacate the settlements and attempted to raise new issues. The trial court reaffirmed the initial property settlements and found that Carter unreasonably contributed to the length and expense of the proceedings. She was ordered to pay $5,000 in attorney fees.

On appeal, Carter challenges the division of the retirement plan and annuity, and the order imposing payment of attorney fees.

## ISSUES

I. Did the trial court err by attributing a portion of increased retirement plan and annuity values to Donald White's premarital investments and characterizing it as nonmarital property?

II. Did the trial court abuse discretion in ordering Sondra Carter to pay attorney fees for unreasonably contributing to the length and expense of the proceedings?

## DISCUSSION

### I. Retirement Plan and Annuity

Sondra Carter challenges the trial court's dissolution decree categorizing a portion of the increases in values as nonmarital property. A trial court has broad discretion over the division of marital property and will not be overturned on appeal absent a clear abuse of discretion. *Bogen v. Bogen*, 261 N.W.2d 606, 609 (Minn.1977). This court need not, however, defer to a trial court's legal conclusion about the marital or nonmarital nature of property. *Burns v. Burns*, 466 N.W.2d 421, 423 (Minn.App.1991). Whether property is marital or nonmarital is a question of law that this court may review with independent judgment, but facts underlying a finding that property is marital or nonmarital will be set aside only if clearly erroneous. *Swick v. Swick*, 467 N.W.2d 328, 330 (Minn.

App.1991), *pet. for rev. denied* (Minn. May 16, 1991).

The parties stipulate that division of the TIAA/CREF and annuity be governed by the same legal principles. Carter contends the trial court erred by awarding White a portion of the accounts representing growth attributed to his premarital investments. According to Carter, the entire $149,333.21 increase in value from the date of marriage until the date of dissolution is marital property that must be divided equally.

We disagree that the entire accretion must be deemed marital property. Some assets may be part marital and part nonmarital. *Swick,* 467 N.W.2d 328, 330. "Marital property" includes all property acquired during marriage. Minn.Stat. § 518.-54, subd. 5 (1992). The trial court is not required to make an equal division of marital property but, rather, a "just and equitable" division. Minn.Stat. § 518.58 (1992). "Nonmarital property" includes all property acquired before marriage and the increase in value of that property. Minn.Stat. § 518.54, subd. 5(b), (c) (1992).

This statutory language does not distinguish between the increases in value that occur prior to marriage, and the increases that occur during marriage. *Nardini v. Nardini,* 414 N.W.2d 184, 191 (Minn.1987). Neither does the statute distinguish between realized and unrealized gain. *Id.* In *Nardini,* the court explained increases in value that occur during marriage:

> [I]ncrease in the value of nonmarital property attributable to the efforts of one or both spouses during their marriage, like the increase resulting from the application of marital funds, is marital property. Conversely, an increase in the value of nonmarital property attributable to inflation or to market forces or conditions, retains its nonmarital character.

*Id.* at 192.

Marriage is analogous to a partnership agreement. Increases during marriage in the value of nonmarital property as a result of efforts by one or both spouses are treated as a return on investment made by the marital entity. Investment during marriage is not limited to financial contributions:

> [T]he concept of equitable distribution is a corollary of the principle that marriage is a joint enterprise whose vitality, success, and endurance is dependent upon the conjunction of multiple components, only one of which is financial.

*Id.* (quoting *Wood v. Wood,* 119 Misc.2d 1076, 465 N.Y.S.2d 475, 477 (Sup.Ct.1983)). Thus, increases in value during marriage attributable to efforts of the spouses, whether by financial investment, labor, or entrepreneurial decision-making, are marital property. On the other hand, increases in value of nonmarital property remain nonmarital if shown to be attributable solely to market forces or conditions, such as simple appreciation in value of an asset.

When attributing growth to market forces, courts distinguish between appreciation and income, and determine whether the growth represents realized or unrealized gain. *See, e.g., Swick,* 467 N.W.2d at 332. In *Swick,* the court held that interest on a certificate of deposit earned during marriage constitutes income to be divided as a marital asset. *Id.* at 331–32. While the initial contribution to principal remains nonmarital, the court stated that realized interest constitutes "income" and not "appreciation":

> [A]ppreciation of an asset can only be realized when the asset is sold or distributed. In contrast, the interest here was *available* as a liquid asset to the parties during their marriage in a manner analogous to rental income, cash dividends, or stock proceeds.

*Id.* at 332 (emphasis added).

Courts also distinguish between active and passive appreciation. Upon dissolution, a spouse is entitled to receive the original nonmarital asset and any passive appreciation in value. *Johnson v. Johnson,* 388 N.W.2d 47, 49 (Minn.App.1986). By contrast, active appreciation is marital property

and occurs when the spouses contribute money during marriage to a nonmarital asset. *Swick,* 467 N.W.2d at 331.

■ Realized interest that constitutes income is illustrated when nonmarital property is used to purchase interest-bearing debentures during marriage. *Moore v. Moore,* 391 N.W.2d 42, 43–44 (Minn.App.1986). Where the debentures are jointly held by both spouses and there is no evident restriction on use of the interest, interest generated from the debentures represents marital income. *Id.; see also Campion v. Campion,* 385 N.W.2d 1, 4–5 (Minn.App.1986) (characterizing rental income available from nonmarital apartment building as marital income); *Ranik v. Ranik,* 383 N.W.2d 431, 435 (Minn.App. 1986), *pet. for rev. denied* (Minn. May 22, 1986) (characterizing interest earned on nonmarital property in a joint account as marital, but interest earned on a separate, untouched account remains nonmarital); *Pearson v. Pearson,* 363 N.W.2d 337, 339 (Minn. App.1985) (characterizing rental income received annually from nonmarital farm land as marital property). Courts generally hold that upon dissolution, spouses are entitled as return on their marital investment any earned interest available to either party as a result of marital efforts.

■ Applying the principles discussed above, we hold that a portion of the growth in White's TIAA/CREF and annuity is attributable to the parties' marital investments and is therefore marital property. Both spouses contributed money earned during their marriage to the TIAA/CREF account and to the annuity. By contributing marital funds, the marriage partnership has foregone the opportunity to invest and generate earnings from these funds or otherwise to use the funds. This portion of increase in TIAA/ CREF and annuity values is a result of active appreciation. *See Swick,* 467 N.W.2d at 331. The increased values attributable to the contributions made by both spouses during

their marriage was correctly characterized by the trial court as marital property. *See Nardini,* 414 N.W.2d at 192.

■ We further hold that a portion of the TIAA/CREF and annuity accretions is attributable solely to passive appreciation of White's premarital investments. This property remains nonmarital. *See Johnson,* 388 N.W.2d at 49. In findings of fact, the trial court accepted a valuation to which the TIAA/CREF would have increased during marriage had White terminated employment on the date of marriage and made no further contributions during the marriage.[1] In other words, no evidence demonstrates that this portion of TIAA/CREF and annuity growth is attributable to efforts of either spouse during marriage.

With regard to this portion of growth, the investors' role was passive. No entrepreneurial decisions were made. Neither spouse decided during the marriage whether to invest money in the nonmarital funds, nor could either spouse withdraw the funds. After the initial contributions were made by White prior to marriage, he had no further control over the investments. The TIAA/ CREF does not provide for cash withdrawal prior to termination from employment or retirement. Income is deferred and not taxed until realized at termination or retirement. There is no investment by the marital partnership that caused this portion of the accounts to grow in value.

In this case, because the interest generated from White's nonmarital property was not available as a liquid asset during marriage, and because a portion of this interest cannot be attributed to efforts of the marital partnership, this portion of accretion was correctly characterized by the trial court as nonmarital property. *See Swick,* 467 N.W.2d at 332.

## II. Attorney Fees

■ The trial court found that Carter unreasonably contributed to the length and

---

1. Carter does not contend on appeal that the trial court's findings concerning valuation of the ac-

counts is erroneous.

880

expense of the proceedings, and ordered her to pay $5,000 in attorney fees. The standard of review for decisions on attorney fees is whether the trial court abused discretion. *Radloff v. First American Nat'l Bank,* 470 N.W.2d 154, 156 (Minn.App.1991), *pet. for rev. denied* (Minn. July 24, 1991). "Only rarely will a trial court's decision regarding attorney fees be overturned on appeal." *Duffey v. Duffey,* 432 N.W.2d 473, 478 (Minn. App.1988) (citation omitted).

The court has discretion to order a party to pay attorney fees if that party

acted in bad faith; asserted a claim or defense that is frivolous and that is costly to the other party; [or] asserted an unfounded position solely to delay the ordinary course of the proceedings.

Minn.Stat. § 549.21 (1992). Carter was ordered to pay attorney fees for her actions both during the course of the proceedings and for erroneously setting aside the property settlements.

White and Carter, each represented by counsel, negotiated throughout the entire day of the scheduled final hearing and eventually reached several "mini" settlements for the division of their property. Each agreement was reduced to writing, signed, and dictated into the record before the trial court. The court indicated that each party negotiated the property settlements in good faith. Carter stated the settlements were voluntarily agreed upon, but she nevertheless objected to these settlements two weeks later. Accordingly, the trial court vacated the stipulation and ordered an evidentiary hearing.

At the hearing, White, Carter, and Carter's initial attorney each appeared. Carter then withdrew all objections to the proposed decree and withdrew her request to vacate the stipulation. She also attempted to raise additional property settlement issues without having notified opposing counsel. After withdrawing her objections, the initial settlements were reaffirmed by the court. Thus, each party was required to prepare for and attend an unnecessary hearing. The record

suggests that Carter's objections and additional claims were frivolous and costly to the interested parties. The record contains a detailed itemization of attorney fees incurred by White as a result of these claims. The amount of attorney fees awarded by the trial court is a fraction of the total expenses incurred. The trial court did not abuse discretion by ordering Carter to pay attorney fees.

## DECISION

The trial court did not err in characterizing a portion of increase in value of the TIAA/CREF and annuity as marital property and a portion as nonmarital property. The trial court did not abuse discretion in ordering Carter to pay attorney fees.

**Affirmed.**