James J. KELLOGG, et al., Respondents,

v.

William B. WOODS, defendant and third party plaintiff, Appellant,

v.

Wayne Anderson, d/b/a Mariway Land Consultants, third party defendant, Respondent.

No. A05–1837.

Court of Appeals of Minnesota.

Sept. 12, 2006.

noncompliant when he sold the property and that he had reason to know of the noncompliance, and that the district court improperly limited damages for the septic-system inspector's breach of contract. Because the district court correctly applied section 115.55, subdivision 6, and the findings supporting the judgment are not clearly erroneous, we affirm Woods's liability to the buyers under section 115.55. But because the district court erred in its legal determination of the scope of damages for a negligent septic-system inspection, we reverse and remand for further proceedings on damages.

Todd M. Johnson, Johnson Law Group, L.L.P., Minnetonka, MN, for respondents James J. Kellogg, et al.

Glenn P. Bruder, Mitchell, Bruder & Johnson, Edina, MN, for appellant.

Erik J. Askegaard, Askegaard & Robinson, P.A., Brainerd, MN, for respondent Wayne Anderson, d/b/a Mariway Land Consultants.

Considered and decided by LANSING, Presiding Judge; KLAPHAKE, Judge; and PARKER, Judge.*

## OPINION

LANSING, Judge.

The district court entered judgment against William Woods for violating the mandatory-disclosure requirements for individual sewage-treatment systems set forth in Minn.Stat. § 115.55, subd. 6 (2004). Woods appeals, arguing that the district court misinterpreted the statute, that the record does not support the district court's findings that the system was

## FACTS

William Woods purchased a lake cabin in the fall of 1996 for seasonal use. Because his family rarely used the cabin, he decided to sell it in 2000. James and Tari Kellogg signed a purchase agreement for the property in March 2001 and closed on the sale in April 2001. An addendum to the purchase agreement stated that the "[s]eller agrees to provide buyers with a current septic inspection and warrants its compliance."

Jim Christensen, Woods's real estate agent, contracted with Wayne Anderson to inspect the septic tank, and on March 28, 2001, Anderson deemed it compliant. Anderson testified that he removed the cover from the septic tank and visually examined the tank with a flashlight. He then used a piece of rebar to comb across the bottom of the tank two or three times. He testified that gray-colored water prevented him from seeing the bottom of the tank, but, because the rebar did not catch on the bottom of the tank, he determined that it was not cracked.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

The inspection was consistent with a previous disclosure statement, signed by Woods and issued in September 2000. The disclosure statement represented that the tank was in compliance with applicable laws and rules, had a 500–gallon capacity, was pumped three times a year, and had last been emptied in September 1999.

Shortly after signing the purchase agreement, the Kelloggs arranged to have the tank emptied because they had noticed, when first viewing the property, that the tank level-indicator showed that the tank was full. According to James Kellogg, the company he hired went to the site on March 28, and Anderson, who was inspecting the tank, said that it did not need emptying. Anderson disputes this claim. Between March 28 and June 4, 2001, the Kelloggs used the cabin twice. They first emptied the tank on June 4, removing 750 gallons. Although the cabin was not used between June 4 and June 22, the indicator again showed that the tank was full on June 22. On July 19 the Kelloggs had 700 gallons removed from the septic tank at 10:00 a.m. At 10:00 p.m., with no intervening activity at the cabin, the tank had ten inches of water in it.

The Kelloggs hired Arlen Sergent to inspect the septic tank in August 2001. Sergent found that the bottom of the tank was cracked and that the septic system was failing. The Kelloggs later sold the property and, for purposes of the sale, removed the septic tank in May 2002 and installed two 750–gallon tanks. When removing the old tank, Sergent noted in his report that, when the tank was emptied for the August 2001 inspection, it had "numerous cracks in the floor." The report also noted that, "It appeared to have been that way for a long time."

The Kelloggs sued Woods and Anderson in conciliation court in September 2002 to recover the costs of replacing the cracked septic tank. The conciliation court found Woods liable to the Kelloggs for the cost of replacing the tank because he had warranted the septic system's compliance. The conciliation court dismissed the claim against Anderson because the Kelloggs had no contractual relationship with Anderson.

In response to Woods's demand, the case was removed to the district court. The district court granted the parties leave to amend the complaint and answer and also granted Woods's motion to join Anderson as a third-party defendant. The Kelloggs amended their complaint to state claims only against Woods. They alleged that Woods violated Minn.Stat. § 115.55, subd. 6(b) (2004), and breached the warranty in the purchase-agreement addendum. In a cross-claim, Woods alleged that Anderson was obligated to indemnify him for any amount for which the court found Woods liable to the Kelloggs.

Following a trial, the district court determined that Woods violated Minn.Stat. § 115.55, subd. 6(b). The court ordered Woods to pay the Kelloggs the costs incurred to replace the septic tank and the statutorily permitted attorneys' fees. On Woods's cross-claim against Anderson, the district court determined that Anderson was negligent in conducting his inspection but limited Woods's recovery to $150, the cost of the second compliance inspection. In this appeal from judgment, Woods contends that the district court misinterpreted section 115.55, subdivision 6. Alternatively, he contends that, if he is liable to the Kelloggs, he is entitled to full indemnification from Anderson.

## ISSUES

I. Did the district court err by applying Minn.Stat. § 115.55, subd. 6(b) (2004), to find that a seller is liable to a buyer

for representing a septic system's compliance with sewage-treatment-system rules on the ground that the seller had reason to know the representations were false?

II. Is the evidence sufficient to support the district court's finding that, at the time of the sale, the seller had reason to know that the septic system was not in compliance?

III. Did the district court err by limiting a septic-system inspector's liability for a negligent inspection to the costs of a second inspection?

## ANALYSIS

### I

Minnesota law requires that, before entering an agreement for the sale of real property, the seller must disclose to the buyer, in writing, the method for managing sewage generated on the property. Minn.Stat. § 115.55, subd. 6 (2004). If the sewage is not routed to a permitted facility, the seller must make a series of specific disclosures, including whether the system is, "to the seller's ... knowledge, in compliance with applicable sewage treatment laws and rules." *Id.*, subd. 6(a)(2). Subdivision 6(b) also provides for the disclosure of the known status of an individual sewage-treatment system at the time of sale and provides specific penalties relating to a failure to disclose or a false disclosure of the status of the system. *Id.*, subd. 6(b). A seller who "knew or had reason to know of the ... known status of the system" is liable for costs related to bringing the system into compliance and for reasonable attorneys' fees associated with the collection of those costs. *Id.*

Woods argues that the district court erred in its interpretation of Minn.Stat. § 115.55, subd. 6(b), because the court used a constructive-knowledge standard instead of an actual-knowledge standard. This interpretation, he argues, effectively makes sellers guarantors of septic systems when selling real property.

■ Statutory interpretation is a question of law, which we review de novo. *ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn.2005). The goal of statutory interpretation is "to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2004). Our starting point is the specific language of the statute to determine whether it has a plain meaning. *Id.* If on its face a statute's meaning is plain, judicial construction is neither necessary nor proper. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). Minnesota appellate courts have not yet addressed the meaning of subdivision 6(b), but the language of the subdivision supports the district court's interpretation. This interpretation is not as broad as Woods suggests.

■ Subdivision 6(a)(2) first requires a seller to disclose, "to the seller's ... knowledge," whether the system is in compliance with state regulations. Minn.Stat. § 115.55, subd. 6(a)(2). Subdivision 6(b) provides for liability of a seller who fails to disclose a known status when the seller "knew or had reason to know of the ... known status." Id. subd. 6(b). Woods interprets the statute to impose liability only for intentional misrepresentations. But the express language "had reason to know" must be given its plain meaning; it expands the relevant state of mind beyond actual knowledge to include what the seller should reasonably know. *See ILHC,* 693 N.W.2d at 419 (noting that "[w]henever possible, no word, phrase, or sentence should be deemed superfluous, void, or insignificant" (quotation omitted)).

■ The specific context of subdivision 6 and the general context of the statute as a whole make it clear that the provisions are aimed at ensuring that buyers are informed. The statute would lose its force if a seller could make statements that the seller either has reason to know are false or does not actually know to be true or false. *See Yost v. Millhouse*, 373 N.W.2d 826, 830 (Minn.App.1985) (noting that, for purposes of misrepresentation claim, knowledge of falsity is not required and can be satisfied by proof that representer asserted facts of own knowledge without knowing their truth or falsity). As applied to subdivision 6(b) a seller may therefore be held liable to the buyer when the seller has reason to know that he has erroneously represented the status of the septic system.

The statute does not, as Woods interprets the district court to suggest, make the seller a guarantor of the system; the statute only requires disclosure of its status. Neither does the district court's decision impose an independent obligation on sellers to obtain compliance inspections before the sale of real property. It was instead the terms of the purchase agreement that required Woods, as the seller, to obtain a "current septic inspection and warrant[ ] its compliance." The facts of this case raise only the issue of whether the variant operation of the system gave Woods reason to know that the septic tank was not functioning properly and that he should not have represented it to the buyer as a fully compliant system. The district court did not err by applying Minn. Stat. § 115.55, subd. 6(b), to find that a seller is liable to a buyer when the seller makes representations about a septic system's compliance with sewage-treatment-system rules and the seller has reason to know that the representations are false.

## II

Woods next argues that, even if the district court applied the proper statutory standard, the record does not support the district court's findings that the septic tank had cracks in it in March 2001 and that Woods had reason to know of problems with the tank at the time of the sale. We review the district court's findings of fact for clear error. Minn. R. Civ. P. 52.01.

■ Sufficient evidence supports the district court's finding that the septic tank was cracked when Woods sold the property to the Kelloggs. Circumstantial evidence is adequate to support a decision if the evidence justifies the fact-finder's reasonable inferences and these inferences outweigh conflicting evidence. *Smith v. Kahler Corp.*, 297 Minn. 272, 276, 211 N.W.2d 146, 150 (1973). Significantly, Woods's initial disclosure indicated that the tank had a 500–gallon capacity, but the tank held 1,250 gallons, and Woods testified that, during his period of ownership, he had the tank emptied only one time in 1997. Records produced at trial indicated that the tank was actually emptied once in 1996, twice in 1997, and not at all between 1997 and when the Kelloggs first emptied the tank in 2001.

In March 2001, despite limited use of the property by Woods's family, the level-indicator signified that the tank was full. Anderson testified that the tank "should have been pumped" in March. The tank was finally emptied on June 4. It was full again on June 22, and the Kelloggs did not use the property between June 4 and June 22. Similarly, on July 19 the Kelloggs discovered that even though the cabin had not been used, the tank was nonetheless beginning to fill again. Although the Kelloggs did not confirm that the tank was cracked and that ground water was seeping into the tank until August 2001, the

evidence supports the court's finding that the cracks were present in March, and the tank was therefore noncompliant. *See* Minn. Rules 7080.0060, subp. 3 (stating compliance criteria for individual sewage-treatment systems), .0130, subp. 1(A) (requiring sewage tanks to be watertight) (2005).

█ The record also supports the district court's finding that Woods had reason to know that the tank was noncompliant at the time of the sale. Woods testified that, throughout his ownership, he "never paid attention to [the septic tank] at all, period." But the record demonstrates that, despite his inattention, several incidents gave Woods reason to know the tank had operational problems and was not in the condition he represented in the 2000 disclosure statement.

Woods acknowledged that he had to empty the tank in 1997, even though he used the cabin only two times that season. And although he contends that he believed the tank held only 500 gallons, a November 1997 receipt states that 700 gallons were removed from the septic tank. Woods also testified that he never saw the level-indicator raised other than once in 1997. But James Kellogg and Anderson each testified that the indicator was obviously raised in March 2001, and Woods testified that he used the cabin only once or twice in 2000, and only six to eight times during the entire time he owned the cabin. Furthermore, when asked at trial about his reaction to learning the actual capacity of the septic tank, Woods testified, "That would explain to me why the bobber kept going up and down. When I would push it down, it would go back up and down." This specific testimony contradicts his general testimony that he had not noticed how the system operated and also contradicts his testimony that he never saw the level-indicator raised except in 1997.

█ Although Woods challenges the district court's decision to credit Kellogg's testimony over his, credibility determinations are exclusively the province of the fact-finder. *Gada v. Dedefo,* 684 N.W.2d 512, 514 (Minn.App.2004). He further challenges the court's reliance on documented statements by Sergent, but Woods did not object to the district court's admission of any exhibits. *See Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.,* 715 N.W.2d 458, 481 (Minn.App. 2006) (noting that party that fails to object to evidence at trial waives objection on appeal), *review denied* (Minn. Aug. 23, 2006).

█ Based on its determination that the septic tank was noncompliant in March 2001, the district court found that Anderson did not properly conduct the compliance inspection. Woods's real estate agent, Christensen, hired Anderson to perform the inspection. The court found that Christensen was negligent in failing to arrange to empty the tank before the inspection, and that Anderson was negligent in carrying out the inspection using only a flashlight and a piece of rebar when the tank was not empty. The district court did not clearly err in finding that the inspection was negligently performed, and a principal is liable for his agents' acts committed in the scope of the agency relationship. *See Bedow v. Watkins,* 552 N.W.2d 543, 547 (Minn.1996) (discussing principal's liability for agent's acts).

Paired with the many indicators that the tank was not properly operating, the district court did not err by determining that Woods's inattention and inadequate inspection of the tank supported liability under section 115.55. Woods provided a disclosure to the Kelloggs as required by the statute, but his disclosure was not in-

formed. He had reason to know that the system was not in the condition represented in the 2000 disclosure statement. The statement is full of incorrect information that Woods either had reason to know was not true or did not know to be true or false, given his repeated testimony that he paid little attention to the tank. Woods therefore failed to make an accurate disclosure when he had reason to know the status of the septic system, and the district court did not err by finding him liable to the Kelloggs under Minn.Stat. § 115.55, subd. 6.

## III

When an agent acts for a disclosed principal and enters a contract with a third party on behalf of the principal, the contract is between the principal and the third party. *Kost v. Peterson*, 292 Minn. 46, 49, 193 N.W.2d 291, 294 (1971). Christensen hired Anderson to perform the compliance inspection. Although the district court in its memorandum denying posttrial motions noted that Christensen was Woods's agent for purposes of liability under section 115.55, the court inconsistently concluded that Christensen was not his agent with respect to hiring Anderson's services. Anderson knew that Woods was the owner of the property and that the inspection was for the purpose of transferring title. The district court therefore erred in its determination that Woods did not have a contractual relationship with Anderson. Anderson did not file a notice of review to appeal the district court's finding that he failed to perform the inspection properly.

Woods challenges the district court's determination of damages that Anderson owes to Woods as a result of improperly performing the inspection. The appropriate measure for breach-of-contract damages is the amount that will place the nonbreaching party in the same position he would be in had the contract been performed. *Frank v. Jansen*, 303 Minn. 86, 95, 226 N.W.2d 739, 745 (Minn. 1975). Had Anderson properly performed his inspection, he would have discovered the cracks in the septic tank. Woods likely would have replaced the system and the Kelloggs would not have sued him. Woods therefore would have incurred the costs of replacing the septic tank, but he would not have incurred the cost of Sergent's inspection, $150, or the cost of the Kelloggs' attorneys' fees, $3,861.20.

The district court determined that Anderson cannot be held liable for attorneys' fees because Minn.Stat. § 115.55, subd. 6(b), which permits a buyer to recover reasonable attorneys' fees, is framed in terms of the seller's liability and does not address third-party liability. But Anderson's liability does not result from a cause of action against him under section 115.55. Woods, as the seller, is liable to the Kelloggs for violating the statute. Anderson's liability to Woods derives from a separate cause of action based in contract. The court therefore erred in its determination that Woods's recovery is limited to $150 in tort liability, and we remand for further proceedings on the determination of damages.

## DECISION

The district court correctly interpreted Minn.Stat. § 115.55, subd. 6(b) (2004), to impose liability on a seller who represents that a septic system is compliant with applicable sewage-treatment-system laws and rules when the seller has reason to know the system is noncompliant. Because the seller's liability to the buyer resulted from a negligent septic-tank inspection, and the seller sought indemnification from the inspector based in contract and not under section 115.55, the seller

may recover from the inspector the attorneys' fees for which he is liable to the buyer.

**Affirmed in part, reversed in part, and remanded.**