In re the Marriage of Carol Bernice **BAKER, petitioner, Appellant,**

v.

**Daniel Remember BAKER, Respondent.**

No. A06–1252.

Court of Appeals of Minnesota.

July 3, 2007.

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, Minneapolis, MN, for appellant.

Richard D. Goff, Richard D. Goff & Associates, Minneapolis, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; WRIGHT, Judge; and HARTEN, Judge.*

## OPINION

WRIGHT, Judge.

In this appeal from the district court's judgment dissolving the parties' marriage, appellant-wife challenges the district court's division of the parties' marital property, arguing that the district court (1) understated the portion of respondent-husband's retirement accounts that is marital property; (2) understated the overall value of husband's surgical practice by not including the value of the institutional good-

will of the practice; and (3) abused its discretion by holding that husband did not improperly dispose of marital assets. By notice of review, husband challenges the district court's spousal-maintenance award to wife, arguing that it is based on erroneous and insufficient findings. We affirm in part, reverse in part, and remand.

## FACTS

In May 2003, appellant-wife Carol Baker filed a petition for dissolution of her 13-year marriage to respondent-husband Daniel Baker. After a trial before a referee, the district court entered a judgment dissolving the parties' marriage, dividing their property, and awarding wife spousal maintenance.[1] Thereafter, wife moved the district court to amend its findings of fact and conclusions of law. The district court denied the motion, and this appeal followed.

## ISSUES

I. Did the district court err as a matter of law when it held that the value of the appreciation of husband's premarital retirement funds is nonmarital property?

II. Did the district court erroneously conclude that the law precludes the inclusion of the value of the institutional goodwill accumulated in husband's surgical practice during the parties' marriage in the overall valuation of the practice?

III. Did the district court abuse its discretion when it held that husband did not improperly encumber or dispose of marital assets when he used them to pay his attorney fees, fund education accounts for his and wife's grandchildren, pay for his daughter's wedding, and purchase a one-half interest in a Porsche?

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. At the time of dissolution, wife was age 57 and husband was age 69.

IV. Did the district court abuse its discretion when it set husband's spousal-maintenance obligation?

## ANALYSIS

■ As an initial matter, we consider the scope of review in this case. Wife filed a motion for a new trial or amended findings of fact and conclusions of law. Because the motion did not identify specific grounds for a new trial, the district court concluded that, "No motion for a new trial is before th[is] Court." The district court also denied the motion for amended findings of fact and conclusions of law. In the absence of a motion for a new trial, our scope of review includes substantive legal issues properly raised to and considered by the district court, whether the evidence supports the findings of fact, and whether those findings support the conclusions of law and the judgment. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 310 (Minn.2003) (stating that new-trial motion is not prerequisite to appellate review of substantive legal issues properly raised and considered in district court); *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976) (stating that absent motion for new trial, appellate courts may review whether evidence supports findings of fact and whether findings support conclusions of law and judgment).

## I.

■ Wife first argues that the district court erred as a matter of law when it held that the appreciation of husband's premarital retirement funds is nonmarital property. Whether property is marital or nonmarital is a question of law over which we exercise de novo review. *Gottsacker v. Gottsacker*, 664 N.W.2d 848, 852 (Minn. 2003). But in doing so, we defer to the district court's findings of fact. *Id.*

■ Marital property is "property, real or personal, including vested public or private pension plan benefits or rights, acquired by the parties, or either of them, to a dissolution ... proceeding at any time during the existence of the marriage." Minn.Stat. § 518.003, subd. 3b (2006) (codified at Minn.Stat. § 518.54, subd. 5 (2004)). All property acquired by either spouse during the marriage is presumed to be marital property. *Id.* To overcome this presumption, a spouse must demonstrate by a preponderance of the evidence that the property is nonmarital. *Crosby v. Crosby*, 587 N.W.2d 292, 296 (Minn.App. 1998), *review denied* (Minn. Feb. 18, 1999). Nonmarital property includes property acquired by either spouse before marriage and any increase in the value thereof, Minn.Stat. § 518.003, subd. 3b, provided such an increase is the result of passive appreciation, *Gottsacker*, 664 N.W.2d at 853 (citing *Nardini v. Nardini*, 414 N.W.2d 184, 193 (Minn.1987)); *Swick v. Swick*, 467 N.W.2d 328, 331 (Minn.App. 1991), *review denied* (Minn. May 16, 1991). Appreciation is passive when it is " 'attributable to inflation or to market forces or conditions.' " *Gottsacker*, 664 N.W.2d at 853 (quoting *Nardini*, 414 N.W.2d at 192). In other words, appreciation occurring when "no investment decisions are made, and neither [spouse] may withdraw the funds or otherwise control the investments," is passive. *Prahl v. Prahl*, 627 N.W.2d 698, 706 (Minn.App.2001). Conversely, appreciation that is attributable to the exertion of efforts by one or both spouses during the marriage generally is deemed active and, thus, marital property. *Gottsacker*, 664 N.W.2d at 853 (quoting *Nardini*, 414 N.W.2d at 192); *White v. White*, 521 N.W.2d 874, 878 (Minn.App. 1994). Such efforts may include the application or investment of marital funds, marital labor, or entrepreneurial decision-mak-

ing that is marital in nature. *White*, 521 N.W.2d at 878.

When the parties married, husband had $957,473 in a retirement plan entitled Specialists in General Surgery Pension and Profit Sharing Plan ("SIGS accounts"). During the marriage, additional contributions and investment returns caused the value of the SIGS accounts to reach $3,088,072 on the date of valuation for the dissolution proceedings. During trial, husband's expert, Thomas Harjes, testified as to the proper allocation of that amount between marital and nonmarital property. To derive this allocation, Harjes classified the premarital amount of $957,473 as nonmarital property and all contributions made during the marriage as marital property. For each year of marriage, Harjes determined the percentage of funds in the SIGS accounts that was marital property and the percentage that was nonmarital property. He then used those percentages to divide the investment returns between marital and nonmarital property. Based on these calculations, Harjes concluded that $639,577 of $3,088,072 was marital property subject to equitable division. The district court adopted Harjes's conclusions and allocated the final value of the SIGS accounts between marital and nonmarital property accordingly.

Wife challenges this allocation, arguing that the district court should have allocated the entire amount by which the SIGS accounts have increased above the premarital amount of $957,473 to marital property because that increase is attributable to the exertion of marital efforts. Specifically, wife argues that this increase is the result of husband's active management of the SIGS accounts himself and through his financial advisor. The district

court rejected this argument, holding that the appreciation of a spouse's nonmarital retirement funds is not active appreciation "simply because the spouse ... hires a financial advisor to manage the funds."

We agree that a financial advisor's management of a retirement account containing nonmarital funds does not necessitate a finding that the appreciation of those funds is active. That nonmarital funds are managed by a financial advisor, however, does not *preclude* a finding that the appreciation thereof is active. Rather, to make this determination, a district court must examine the nature of the spouses' efforts regarding these retirement accounts. *Gottsacker*, 664 N.W.2d at 853. Here, the district court's findings of fact and the record evidence of husband's involvement with the SIGS accounts establish that the appreciation of the SIGS accounts is active and, therefore, marital property.

At trial, wife testified that she and husband hired financial advisor Randy Trask to manage the SIGS accounts. Specifically, wife testified that "after we were married we invited Merrill Lynch representatives to come out to our home and discuss retirement plans for our future.... [T]ogether we sat down and chose some Merrill Lynch plans and then invested money in those plans." Trask testified that husband paid him an annual fee to manage these accounts.[2] Trask confirmed that he "could not have discretionary management over any of these accounts if [husband] would not allow it" and that husband "has the ultimate control over [the] accounts." Harjes also confirmed that husband has full discretion regarding how the accounts are controlled.

**2.** We cannot determine from the record whether Trask is paid with the parties' mari-

tal property or with nonmarital property.

The evidence conclusively establishes that husband and Trask created an agency relationship when they mutually agreed that Trask would act on husband's behalf but subject to husband's control. *See A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285, 290 (Minn.1981) ("Agency is the fiduciary relationship that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."); *see also Dalager v. Montgomery Ward & Co.*, 350 N.W.2d 391, 394 (Minn.App.1984) (holding that whether agency relationship exists is fact question unless evidence is conclusive). As such, husband is bound by Trask's active management of the accounts as if it were his own. *See Fingerhut Mfg. Co. v. Mack Trucks, Inc.*, 267 Minn. 201, 204, 125 N.W.2d 734, 737 (1964) (holding that when agent acts within scope of express or implied authority, principal is bound thereby); *Kellogg v. Woods*, 720 N.W.2d 845, 852 (Minn.App.2006) (holding that principal is liable for agent's acts that are within scope of agency relationship).

Not only did husband actively manage the SIGS accounts through Trask, husband also actively managed them himself. During the trial, there was extensive evidence and testimony presented about husband's ability to control and withdraw

funds from the SIGS accounts. Harjes testified that husband had full authority to make changes to the SIGS accounts, which he often exercised by rolling funds from one account to another. Trask testified that, during his tenure as manager of the SIGS accounts, husband made at least one stock purchase in which husband bought stock of a company with which husband's son was associated. Wife testified, and Trask confirmed, that, at one point, husband transferred the SIGS accounts to another financial advisor, but husband later transferred them back to Trask. Trask and Harjes also testified that, during the marriage, the funds in the SIGS accounts were available as liquid assets that husband could withdraw at any time.[3]

We have held that the ability to control investments or withdraw funds can defeat a claim that the increases in value of premarital funds were the result of passive appreciation.[4] *See Prahl*, 627 N.W.2d at 706 (stating that appreciation is passive when "no investment decisions are made, and neither [spouse] may withdraw the funds or otherwise control the investments"). Taken together, and with the statutory presumption that all property acquired during the marriage is marital property, these characteristics establish that the appreciation of husband's premar-

---

3. Harjes testified that, before age 59 1/2, husband could have withdrawn funds by paying a penalty and that, after age 59 1/2, he has had the ability to freely withdraw funds. Husband testified that, beginning at age 70 1/2, he would be *required* to withdraw $125,000 from the SIGS accounts every year.

4. In support of his argument that the mere ability to control a financial advisor does not make the appreciation of nonmarital funds managed by that advisor active appreciation, husband relies on *Chamberlain v. Chamberlain*, 615 N.W.2d 405 (Minn.App.2000), *review denied* (Minn. Oct. 25, 2000). There, we were presented with the issue of whether the appreciation of the husband's premarital retire-

ment funds was marital property because, during the marriage, the husband actively managed those funds through his financial advisor. *Chamberlain*, 615 N.W.2d at 413. We determined that those funds were marital property on other grounds, and, therefore, declined to reach the merits of this issue. *Id.* But we commented that "the treatment of this nonmarital asset as marital by the district court based on the alleged active management of the account by [husband's] agent is troubling for several reasons." *Id.* at 413 n. 2. Because *Chamberlain* does not identify the reasons such treatment was "troubling," it does not inform our analysis here.

ital funds in husband's SIGS accounts was not the result of mere market forces or conditions but rather the result of marital efforts in the form of entrepreneurial decision-making. Accordingly, this increase constitutes active appreciation that is marital property subject to just and equitable division under Minn.Stat. § 518.58, subd. 1 (2006).[5]

Because the district court erroneously concluded that the value of the appreciation of husband's premarital funds in his SIGS accounts is nonmarital property, we reverse and remand to the district court with instructions to divide the parties' marital property in a just and equitable manner.

## II.

 Wife also argues that the district court erred as a matter of law when it failed to include the value of the institutional goodwill accumulated in husband's surgical practice during the parties' marriage in its overall valuation of the practice for purposes of property division. As discussed above, whether an asset is marital or nonmarital property is a question of law, which we review de novo. *Gottsacker*, 664 N.W.2d at 852. The district court may include intangible assets, such as goodwill,

in its valuation of marital property. *Sweere v. Gilbert–Sweere*, 534 N.W.2d 294, 297 (Minn.App.1995). A district court's valuation of an asset is a finding of fact that we will not set aside unless the record establishes that it is clearly erroneous. *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn.2001). Because "valuation is necessarily an approximation in many cases," it need only fall "within a reasonable range of figures." *Id.* (quotation omitted).

Here, neutral expert Patrick Schmidt testified that the value of husband's surgical practice, Daniel R. Baker, M.D., P.A., without any goodwill is $112,000.[6] Schmidt testified that the value of the practice's goodwill is $365,000, which includes $73,000 in institutional goodwill. The district court credited Schmidt's testimony and adopted his valuation of $112,000 excluding any goodwill as the overall value of the practice. In doing so, the district court determined that "goodwill cannot be included, given the evidence presented" because the goodwill Schmidt calculated is tied "directly to the execution of a noncompet[ition] agreement."[7]

 The district court's determination is based on the general rule that, when a marital dissolution requires the district court to value a business acquired during

---

**5.** In addition to this extensive testimony regarding husband's ability to control and withdraw funds in the SIGS accounts, the district court's findings and the record evidence show that the marital contributions to the SIGS accounts were commingled with the premarital funds therein. But because we conclude that the appreciation of the premarital funds in husband's SIGS accounts is marital property on the ground that it is active appreciation, we need not reach wife's argument that this appreciation is marital property because it cannot be traced to nonmarital property.

**6.** Wife's expert also testified about the practice's value. That expert did not appraise the practice, but he reviewed Schmidt's appraisal. The district court rejected the testimony

of wife's expert, determining that it was "far less credible and reliable than the carefully-considered analysis of [Schmidt,] the neutral expert." As wife concedes, we defer to this credibility determination by the district court. *See Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn.App.2000) (stating that appellate courts defer to district court's credibility determinations).

**7.** That the goodwill is tied to the execution of a noncompetition agreement is consistent with Schmidt's testimony that a willing buyer would pay the entire $365,000 for goodwill only if husband agreed to sign a noncompetition agreement.

the marriage, any value that is attached to a requirement that a spouse restrict his or her postmarital employment options is the nonmarital property of the spouse whose employment options are restricted. *Grigsby v. Grigsby*, 648 N.W.2d 716, 722 (Minn. App.2002), *review denied* (Minn. Oct. 15, 2002); *Sweere*, 534 N.W.2d at 300–01. Although employment opportunities are often restricted through the execution of noncompetition agreements, that a spouse was required to sign a noncompetition agreement does not, by itself, establish that the spouse will be restricted in his or her future employment. *Sweere*, 534 N.W.2d at 297. Rather than restricting future employment, a noncompetition agreement may be a protective device intended to assure the value of the business' goodwill. *Id.* at 297–98 (observing that rather than restricting employment, noncompetition agreement may be intended to prevent solicitation of customers or employees or divulging of trade secrets). A noncompetition agreement also may be some combination thereof, in which case the district court must allocate the value of the noncompetition agreement between its restriction on the spouse's future employment, which is nonmarital property, and its restrictions that are intended to protect the value of the business' goodwill, which is marital property. *Id.* at 298, 301.

Schmidt distinguished between the value of the practice's goodwill that is personal to husband and the value of the "institutional goodwill" that is attributable to the practice itself. Schmidt testified that the institutional goodwill derives from attributes such as "having a workforce in place, ... having a relationship with a hospital where you can do work, ... [and] having a lease in place." None of these restricts husband's future employment. Thus, even if a buyer required a noncompetition agreement to be attached to the value of the practice's institutional goodwill in addition to the value of husband's personal goodwill, that portion of the noncompetition agreement pertaining to the institutional goodwill would not be intended to restrict husband's future employment. The value of that institutional goodwill, therefore, is marital property subject to just and equitable division under Minn. Stat. § 518.58, subd. 1.

Because the district court erroneously excluded the value of the practice's institutional goodwill from the valuation of the practice, we reverse and remand to the district court with instructions to include the value of the institutional goodwill in its valuation of the surgical practice and to divide the parties' marital property in a just and equitable manner.

### III.

■ Wife next argues that the district court abused its discretion when it held that husband did not "dissipate" marital assets [8] when he used them to pay his attorney fees, to fund education accounts for his grandchildren and wife's granddaughter, to pay for his daughter's wedding, and to purchase a one-half interest in a Porsche. Wife argues that this holding resulted in an unjust and inequitable division of the parties' marital property. A district court has broad discretion to divide

---

**8.** In support of her argument, wife cites cases decided before, or derived from cases decided before, the 1991 enactment of Minn.Stat. § 518.58, subd. 1a. 1991 Minn. Laws ch. 266, § 5 at 1197. Those cases refer to a party's "dissipation" of marital assets. Under the version of the statute in effect at the time of the dissolution, however, the question is whether a party "transferred, encumbered, concealed, or disposed of marital assets except in the usual course of business or for the necessities of life." Minn.Stat. § 518.58, subd. 1a (2004).

marital property, and we will not reverse such a division absent a clear abuse of that discretion or an erroneous application of the law, *Ebnet v. Ebnet*, 347 N.W.2d 840, 842 (Minn.App.1984), even if we would have reached a different result, *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn.2002).

Minnesota law prohibits a spouse from transferring, encumbering, concealing, or disposing of marital assets in contemplation of commencing, or during the pendency of, a marital-dissolution proceeding unless the spouse does so with the other spouse's consent or "in the usual course of business or for the necessities of life." Minn.Stat. § 518.58, subd. 1a (2006). A violation of this statute requires the district court to compensate the other spouse "by placing both parties in the same position that they would have been in had the transfer, encumbrance, concealment, or disposal not occurred." *Id.* The party alleging an improper transfer, encumbrance, concealment, or disposal of marital assets bears the burden of proof. *Id.*

Wife argues that the district court erroneously concluded that husband's payment of his attorney fees out of the parties' marital assets did not violate section 518.58, subdivision 1a. We agree. The district court's conclusion not only is inconsistent with our case law, *see Thomas v. Thomas*, 407 N.W.2d 124, 127–28 (Minn. App.1987) ("Any amount taken from marital property to pay one party's attorney's fees should be accounted for … in the distribution [of marital property]."), it also is inconsistent with the district court's own order that "[e]ach party shall be responsible for [his or her] own attorney's fees and costs." We, therefore, reverse the district court's determination that husband did not improperly dispose of marital assets in violation of section 518.58, subdivision 1a, when he used them to pay his attorney fees. Accordingly, we remand to the district court with instructions to compensate wife by placing her in the position she would have occupied had this improper disposal of marital assets not occurred.

■ Wife also argues that husband improperly transferred and disposed of marital assets when he used them to fund education accounts for his grandchildren and wife's granddaughter and to pay for his daughter's wedding. Specifically, wife argues that the district court clearly erred when it found that such expenditures were in the "usual course of business" or "for the necessities of life." The evidence establishes that, throughout their marriage, husband and wife provided support to all of their adult children, often in the form of financial assistance for education costs. The evidence also demonstrates that they were very generous to their grandchildren. Thus, on these facts, the district court's finding that these expenditures were in the parties' usual course of business was not a clear abuse of discretion.

■ Finally, wife argues that the district court abused its discretion when it held that husband's purchase of a one-half interest in a Porsche was not an improper disposal of marital assets. In 2001, husband paid $30,000 for that interest, which, at dissolution, was worth only $19,475. Wife argues that this depreciation constitutes an improper disposal of marital property. Because husband purchased this interest prior to the commencement of the marital-dissolution proceedings, the district court was required to determine whether husband made that purchase in contemplation of the marital dissolution. Minn.Stat. § 518.58, subd. 1a. We agree with the district court's determination that the record is devoid of any evidence that husband purchased this interest "in contemplation" of commencing marital-dissolution proceedings. Therefore, we affirm this aspect of the district court's decision.

## IV.

■■■■ Husband challenges the district court's spousal-maintenance award to wife, arguing that the district court abused its discretion when it set husband's spousal maintenance obligation. A district court has broad discretion in determining spousal maintenance, and we will not reverse such a determination absent an abuse of discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). A district court abuses its discretion when it resolves the matter in a manner that is "against logic and the facts on record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). We will uphold findings of fact unless they are clearly erroneous. *Prahl*, 627 N.W.2d at 702. A finding is clearly erroneous if it leaves us "with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted). We view the evidence in the light most favorable to the district court's findings and defer to the district court's credibility determinations. *Id.*

■■■■ First, husband argues that the district court's spousal-maintenance determination is erroneous because the district court failed to make a specific finding regarding husband's income. Ordinarily, detailed factual findings are necessary to demonstrate that the district court considered the relevant statutory factors. *Tuthill v. Tuthill*, 399 N.W.2d 230, 232 (Minn. App.1987). Insufficient findings render meaningful appellate review impossible. *Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989). The district court's findings are sufficient if they show that the district court considered the statutory factors relevant to its conclusion. *Tuthill*, 399 N.W.2d at 232. When setting a spousal-maintenance obligation, the statutory factors relevant to the district court's conclusion include (1) the financial resources of the spouse seeking maintenance, including the marital property apportioned to that spouse, and that spouse's ability to meet his or her needs; (2) the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to find appropriate employment and the probability that the spouse seeking maintenance will become fully or partially self-supporting; (3) the marital standard of living; (4) the duration of the marriage and, in the case of a homemaker, the length of absence from the job market and the effect thereof; · (5) the loss of earnings and retirement benefits foregone by the spouse seeking maintenance; (6) the age and physical and emotional condition of the spouse seeking maintenance; (7) the ability of the spouse from whom maintenance is sought to meet his or her own needs; and (8) the contribution of each party to the acquisition and appreciation of marital property. Minn.Stat. § 518.552, subd. 2 (2006).

Although the district court did not make a specific finding as to husband's income, the district court's findings demonstrate that the district court thoroughly considered the relevant statutory factors. Regarding the statutory factor that requires the district court to consider husband's income and his ability to meet his own needs, the district court examined husband's recent income levels, the impact a downturn in husband's surgical field would have on husband's income, the incomes of husband's business associates, and husband's intent to retire in the near future. Based on this thorough consideration of the relevant facts, we conclude that the district court's findings regarding this statutory factor are sufficient in spite of the failure to make a specific finding regarding husband's income.

Next, husband argues that the district court made inconsistent findings regarding wife's mortgage debt, which resulted in an erroneous spousal-maintenance determina-

tion. But the district court's findings regarding wife's mortgage obligation are consistent. Together, these findings establish that the resources available to wife are insufficient to allow her to meet her needs regardless of whether she continues to pay her monthly maintenance obligation or she chooses to use her property settlement to pay off her mortgage balance.

■ Finally, husband challenges the district court's determinations that "it is not possible to conclude that [wife] could return to the field of professional nursing at this time" and that wife "is not capable of working full-time." Husband maintains that the district court should have imputed income to wife because wife can work but chooses not to. Before a district court may impute income to a party for the purpose of making a spousal-maintenance determination, it must find that the party is voluntarily unemployed or underemployed in bad faith. *Carrick v. Carrick,* 560 N.W.2d 407, 410 (Minn.App.1997). Here, the district court did not make such a finding. Rather, it credited wife's testimony that she is unable to work in her field of nursing because of her physical limitations. And we defer to the district court's credibility determination. *See Prahl,* 627 N.W.2d at 702 (stating that appellate courts leave credibility determinations to fact-finder when reviewing evidence regarding spousal maintenance).

Husband refers us to the testimony of his expert, Jan Lowe, in support of his argument that wife is voluntarily underemployed in bad faith. Lowe, an employability consultant, testified that there were a number of nursing positions available with job requirements that wife could perform. The district court did not find this testimony credible because "Lowe never interviewed [wife] so as to make a determination as to whether or not [wife] could perform the tasks of a nurse at the present

time," "made no inquiry about whether [wife] had physical conditions which would prevent her from returning to the field of nursing," and "was unable to make any correlation between [wife] as an appropriate candidate for [nursing] jobs [available in the Twin Cities area]." This credibility determination also is accorded deference. *Id.* Therefore, because the record lacks any credible evidence that wife was voluntarily underemployed in bad faith, the district court did not abuse its discretion when it refused to impute income to her.

Although we reject husband's challenges to the district court's spousal-maintenance determination, we recognize that, when the district court revisits the other aspects of the division of marital property addressed in this opinion, the district court may need to reconsider the appropriate amount of spousal maintenance in light of our conclusions that the value of the appreciation of husband's premarital retirement funds in his SIGS accounts is marital property, that the value of the institutional goodwill in husband's surgical practice shall be included in the overall valuation of the practice, and that wife must be compensated for husband's improper disposal of marital property to pay his attorney fees. Indeed, these holdings may affect the district court's findings as to the statutory factors to be considered when setting spousal maintenance. Minn.Stat. § 518.552, subd. 2.

## DECISION

Because the district court erred as a matter of law when it held that the appreciation of husband's premarital retirement funds was nonmarital property and the institutional goodwill accumulated in husband's surgical practice could not be included in the overall valuation of the practice, and because the district court erred when it held that husband did not improp-

erly dispose of or transfer marital assets when he used them to pay his attorney fees, we reverse and remand to the district court to divide the parties' marital property in a just and equitable manner. Because the district court did not abuse its discretion when it held that husband did not improperly encumber or dispose of marital property when he used it to fund education accounts for his grandchildren and wife's grandchild, to pay for his daughter's wedding, or to purchase a one-half interest in a Porsche, we affirm these aspects of the district court's decision. Although we reject husband's challenge to the district court's spousal-maintenance determination, the district court may reconsider on remand the appropriate amount of spousal maintenance for wife in light of the statutory factors set forth in Minn.Stat. § 518.552, subd. 2 (2006), and the division of property.

**Affirmed in part, reversed in part, and remanded.**

MINGE, Judge (concurring in part, dissenting in part).

I concur in sections II, III, and IV of the decision and respectfully dissent from the result in section I.

In reviewing the record and the findings of the district court, I conclude that it used the proper standard for determining what constituted active management of nonmarital investment assets and properly applied that standard.

With three relatively isolated and minor exceptions, respondent did not play an active or practical role in the management of his nonmarital retirement funds. Respondent's "active" involvement consists of three decisions: (1) Investing a modest amount in a business in which his son was involved. This was ultimately a loss; it contributed nothing to the growth of the nonmarital asset and even worse it now contributes to all appreciation as being classified as marital property. (2) Changing his investment advisor. This was done once upon the recommendation of respondent's accountants. This was not active management. It was simply an attempt to save advisory service fees and obtain better services. Respondent subsequently reversed that decision. (3) Rolling funds from certain widely-held mutual funds to others largely within the same family of funds. This was done as any wage earner with a 401(k) account or other flexible retirement fund might adjust a retirement portfolio mix to maintain balance. It was not often or dramatic. Respondent was working full-time. The record is clear that respondent did not engage in research, take time from his medical practice, take time from his family for this activity, or engage an active, hands-on manager. If this constitutes active management, the bar is very high.

In these circumstances, I would not overrule the district court, but rather defer to its decision that respondent's management did not cause the appreciation of a nonmarital retirement fund becomes marital property.